23CA1868 Marriage of Roper 02-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1868
Boulder County District Court No. 11DR482
Honorable Thomas F. Mulvahill, Judge

In re the Marriage of

Timothy D. Roper,

Appellee,

and

Donna J. Wilson-Roper,

Appellant.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE PAWAR
Harris and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

Sherr Puttmann Akins Lamb PC, Courtney McConomy, Denver, Colorado, for
Appellee

Paige Mackey Murray, LLC, Paige Mackey Murray, Boulder, Colorado, for
Appellant

¶ 1     In this post-dissolution of marriage proceeding involving Donna J. Wilson-Roper (wife) and Timothy D. Roper (husband), wife appeals the district court's adoption of the magistrate's order granting husband's motion to terminate maintenance and denying her motion for entry of judgment concerning proceeds of the marital home. We affirm the court's determination of the motion to terminate maintenance but reverse the order related to the motion for entry of judgment. We remand the matter to the district court to consider wife's motion for entry of judgment related to the proceeds of the marital home and both parties' requests for appellate attorney fees.

## I.     Background

¶ 2     The parties ended their twenty-six-year marriage in 2012, and the district court entered permanent orders based on a stipulation. The parties agreed that wife would continue to live in the marital home with two of their minor children. The parties further agreed that when the marital home was sold, wife would retain 75% of the net sales proceeds and husband would retain 25%. Additionally, the parties agreed that husband would pay wife $14,400 per month in maintenance and that he would not provide child support. The

1

parties stipulated that the maintenance received by wife would not be recognized as income and should not be taxable to her.

¶ 3     In 2015, husband moved to modify his maintenance obligation, asserting that his income had steadily declined over several years. He further asserted that at the time of dissolution, wife cared for the parties' terminally ill son full-time, but that child had since passed away, so her ability to work and need to stay in the marital home had also changed. In turn, wife moved for a verified entry of support judgment, alleging that she was owed over $80,000 in maintenance arrearages. The parties stipulated to reduce maintenance to $9,500 per month until the marital home was sold, and then it would be reduced to $8,000 per month. The parties also agreed that after December 2015, the maintenance payments would no longer be tax-free to wife. The parties also agreed that husband would satisfy his maintenance arrearages from the proceeds of the sale of the marital home. Wife filed a full satisfaction of judgment relating to the maintenance arrearages in September 2019.

¶ 4     Several years later, in March 2022, husband moved to terminate maintenance, alleging that his income had continued to

decrease since the parties' previous agreement and that despite his best efforts he once again owed maintenance arrearages to wife.

¶ 5    Wife filed a verified entry of support judgment related to the maintenance arrearages claiming she was again owed a substantial amount.  She also moved for an entry of judgment alleging that when the marital home was sold, $256,953.69 of the proceeds were used to pay two liens in husband's name — one to the IRS and one for maintenance arrearages to her.  Wife asserted that, pursuant to the original separation agreement, she was entitled to 75% of that amount, or $192,715.27, plus interest.

¶ 6    After conducting a hearing, the magistrate terminated husband's maintenance obligation, finding that it had become unfair.  The magistrate also entered the verified entry of support judgment in the amount of $81,164.53 related to the maintenance arrearages.  The magistrate denied wife's motion for entry of judgment related to the proceeds of the home, noting that no statute or operation of law allowed the court to reduce the amount of the proceeds of the sale of the home to a judgment.  Wife petitioned for review and the district court adopted the magistrate's order.

## II. Termination of Maintenance

### A. Standard of Review and Applicable Law

¶ 7    A court may modify or terminate maintenance when there has been a showing of changed circumstances so substantial and continuing as to make the terms of the existing maintenance order unfair. § 14-10-122(1)(a), C.R.S. 2024. This is a demanding standard, and the party seeking to modify maintenance bears a heavy burden to prove that the maintenance terms have become unfair under all relevant circumstances. *In re Marriage of Young*, 2021 COA 96, ¶¶ 12, 16.

¶ 8    We review a court's ruling on a motion to terminate or modify maintenance for an abuse of discretion. *Id.* at ¶ 7. The court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or a misapplication of the law. *Id.*

¶ 9    When, as here, the district court reviewed the magistrate's ruling, we act as a second layer of appellate review. *Id.* at ¶ 8; *see also* C.R.M. 7(a)(11). In doing so, we must construe the evidence in the light most favorable to the prevailing party and accept the magistrate's factual findings unless they are clearly erroneous,

meaning that they have no record support.  *Young*, ¶ 8; *In re Marriage of Nelson*, 2012 COA 205, ¶ 27.

B.    Exclusion of Evidence Regarding Husband's Family Trust

¶ 10    Wife first claims that the magistrate erred by excluding evidence of a trust created by husband's father which wife sought to introduce to show that husband could continue to pay maintenance.  We disagree.

¶ 11    A modification of maintenance must be based on current economic circumstances.  *In re Marriage of Folwell*, 910 P.2d 91, 93 (Colo. App. 1995) (known amount of benefits to be received at definite date in future is proper consideration in setting amount and duration of maintenance, otherwise modification of maintenance must be based upon parties' needs and circumstances at time of hearing rather than speculation about future conditions)*; see also In re Marriage of Simon*, 856 P.2d 47, 51 (Colo. App. 1993) ("Awards of maintenance must be based upon the parties' needs and circumstances at the time of the hearing, rather than upon their past or future conditions.").

¶ 12    At the hearing, the magistrate found that husband and his sister are the beneficiaries of a nonrevocable trust, and that

husband's father was the direct beneficiary and had a life estate. Husband testified that his father was deemed incapacitated in 2018, and a guardian was appointed by a Texas court to conduct his father's affairs. Accordingly, the guardian made all of the decisions regarding the trust. Husband testified that he had never received any money from the trust and did not know its value.

¶ 13    After this testimony, wife attempted to admit the trust agreement as an exhibit and to explore the real estate holdings of an investment company that funded the trust. Husband objected, arguing that such information was not relevant because the value of the trust was unknown, and it was speculative that he would ever receive any money from the trust. The magistrate agreed, explaining that it did not know the current status of the trust, how much money was in it, or when or if husband would receive any proceeds.

¶ 14    Relying on *In re Marriage of Jones*, 812 P.2d 1152, 1158 (Colo. 1991), wife argues the magistrate abused his discretion by declining to consider husband's expectancy interest in the family trust as an "economic circumstance." We first note that *Jones* involved the division of property under section 14-10-113(1)(c), C.R.S. 2024, and

not maintenance modification. And as discussed, maintenance modification should be based on the parties' current financial circumstances and not speculative future conditions.

    C.    Voluntary Underemployment and Income Determinations

¶ 15    Wife next claims that the magistrate erred when he determined husband's income. She argues that (1) husband was voluntarily underemployed and (2) money husband characterized as loans from his father and father's estate should have been treated as gifts and not loans. Lastly, she challenges the magistrate's finding that she had the ability to work more hours or find supplemental work. We address and reject each of these arguments.

    1.    Voluntary Underemployment

¶ 16    A spouse is voluntarily underemployed if they are shirking a financial obligation by unreasonably forgoing higher paying employment that they could obtain. *See People v. Martinez*, 70 P.3d 474, 476 (Colo. 2003); *see also In re Marriage of Wright*, 2020 COA 11, ¶ 21 n.3 ("Though *Martinez* was a child support case, the analysis of voluntary underemployment is the same in a maintenance case."). When making this determination, the court

considers all relevant factors, including a party's post-termination conduct, job search efforts, and refusal to accept employment at a higher salary. *Martinez,* 70 P.3d at 480.

¶ 17    Whether a spouse is voluntarily underemployed is a mixed question of fact and law that "requires the trial court to make factual findings and apply a legal standard to those findings." *Id.* at 476-77.

¶ 18    The magistrate heard testimony from husband and husband's income analysis expert. Husband testified that while dissolution was pending in 2011, he was employed as a creative director for a large advertising agency making over $400,000 a year. During the pendency of dissolution he was fired but had retained employment as a "roster director" from 2012 to 2014. He testified that he was no longer able to get the work he needed on the roster and that he "was basically throwing everything" he had at "any opportunity" with no results. By 2015, he decided to move to modify his maintenance obligation.

¶ 19    Husband testified that he continued doing freelance copywriting and any directing job he could find before finally deciding to start his own directing company. He said he continued

to look for advertising agency jobs, but that technology and hiring philosophies had changed and that no one was looking to pay a sixty-year-old man $400,000 for on the job training. Husband testified that he worked forty hours a week at his directing company and had never turned down work offered to him. The magistrate credited husband's income analysis expert's testimony that over the past five years husband earned an average of $97,405 each year. It also credited husband's testimony that he did not want to "give up" and approach the court for a modification and instead had attempted for years to get additional funds to make up the shortfall. The magistrate noted that no party presented a vocational expert who could address husband's specific job market, but it found that husband testified credibly that he continued to look for full-time work through advertising agencies by using his contacts and a headhunter, and in the meantime worked diligently at his own company and did freelance work. In short, it found husband was not shirking and its finding enjoys record support.

¶ 20    The magistrate also considered money husband received as gifts from his family's estate. Husband's income analysis expert provided an estimation of husband's average annual income,

including tax-motivated gift income husband received in 2021 and 2022. The magistrate credited the expert's testimony and included that amount in calculating husband's income.

¶ 21 For her part, wife argues that the record showed that husband only sought employment as an advertising executive for about six months, that most of his evidence pertained to his efforts to get individual jobs through his current company, and that the magistrate erred by accepting husband's income and business expense calculation "without any scrutiny whatsoever." But wife essentially asks us to reweigh the evidence, which we cannot do. *Nelson*, ¶ 35 (When reviewing for an abuse of discretion, even where "there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court."); *see also In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (it is for the district court, not the reviewing court, to determine the witnesses' credibility and the weight of the evidence).

### 2.   Husband's Loans

¶ 22 We likewise find record support for the magistrate's finding that funds husband received pursuant to promissory notes were loans and not gifts.

¶ 23     A court's determination of money as a debt or a gift depends on the resolution of factual disputes.  *See In re Marriage of Hoffman*, 650 P.2d 1344, 1345-46 (Colo. App. 1982).  "In order to qualify as a 'gift,' a transfer of property must involve a simultaneous intention to make a gift, delivery of the gift, and acceptance of the gift."  *In re Marriage of Balanson*, 25 P.3d 28, 37 (Colo. 2001).

¶ 24     Husband testified that he took several loans from his father from 2014 through 2022, eventually totaling $500,000.  He testified that each time he requested a loan, he did so from either his father, or, later, from the guardian of his father's estate, who is a licensed attorney and with whom husband had no personal relationship.  Five of the promissory notes, totaling $150,000, matured ten years from the issue date and fourteen of them, totaling $350,000, matured five years from the issue date.  Repayment of the first promissory note was scheduled to begin in February 2024.

¶ 25     Wife testified that she believed the promissory notes did not have to be paid back because they were not secured, they had no default clause, and the payment period of the more recent loans had decreased from ten years to five years.  Thus, she argued, the funds husband received in connection with the promissory notes

11

should be treated as income. The magistrate disagreed, finding that the promissory notes were not income but, "for the most part, arms length transactions," that would have to be repaid starting in February 2024.

¶ 26 Wife challenges the magistrate's finding, pointing to husband having described the loans as an "advance on his inheritance" in his motion. She further argues that it is "doubtful that any reasonable fiduciary" would lend husband $500,000 given his financial difficulties and debts. Wife's arguments again ask us to reweigh the evidence to find in her favor and substitute our own judgment for that of the magistrate, which we cannot do. *Nelson,* ¶ 35; *see also Thorburn,* ¶ 49.

### 3. Wife's Income

¶ 27 Wife also challenges the magistrate's finding that she had the ability to work additional hours or find supplemental work should the financial need arise. We perceive no error.

¶ 28 Wife testified that she worked a total of thirty-seven hours per week between two jobs. She made $20 an hour at a package liquor store and made 10% of her sales through a wine distributor. Wife admitted that her sales commission with the wine distributor

compared to the number of hours she put in (i.e., 20 hours/week to earn $500/month) yielded less than minimum wage but testified that her business with the wine distributor "was building" and that she made a "good faith career choice that will yield [her] more income." This testimony supports the magistrate's determination that wife is capable of earning more income. The magistrate also observed that wife's federal income tax withholdings exceeded her income, and her state withholdings were also "well above schedule." This evidence further supports the magistrate's findings regarding wife's income and we will therefore not disturb those findings.

### D. Current Spouse's Contributions to Husband

¶ 29 Wife next claims that the magistrate erred by not considering husband's current spouse's "significant income" when it determined that husband's change of circumstances was significant and continuing. *See In re Marriage of Bowles*, 916 P.2d 615, 618 (Colo. App. 1995) (recognizing, under limited circumstances, consideration of a third party's resources if "the existence or use of such assets is directly relevant to an allegation by the payor spouse of a substantial and continuing change of circumstances in his ability to

meet his reasonable needs while meeting the needs of his former spouse").

¶ 30    We acknowledge that the magistrate found that husband "testified that he is currently married and relies a lot on his spouse's income to pay for a large share of expenses." However, this finding is not supported by the record. Husband testified that his current wife "did not give [him] money" and that she "takes care of her share of expenses" but "doesn't supplement [his] direct lifestyle." Nothing in the record indicates what expenses husband's current wife paid or how her resources were directly relevant to husband's changed circumstances. Accordingly, we discern no error.

E.    Termination Rather than Modification of Maintenance

¶ 31    Wife asserts that the magistrate erred by determining husband had insufficient resources to pay any maintenance. She argues that the maintenance amount should have been reduced instead of terminated.

¶ 32    The magistrate found, with record support, that husband earned an average of $97,405 annually, or $8,117 monthly, and that the $8,000 per month in maintenance consumed nearly all of

14

his monthly earnings. The court noted that husband made regular, but mostly insufficient, maintenance payments from 2016 forward. As discussed, husband borrowed roughly $500,000 from his father's estate over several years and he estimated that between 80 and 90% of those loans were used to pay wife maintenance or attorney fees. Even still, at the time of the hearing, husband again owed more than $80,000 in maintenance arrearages.

¶ 33 Based on this evidence the magistrate found that husband's present and future employment prospects had changed so drastically as to make the amount and term of maintenance unfair. It further noted that husband's income was such that he was not "capable of paying the ordered amount or really any amount." Based on this record, we cannot conclude that the magistrate erred when he found husband's circumstances had changed so drastically that he was unable to pay any amount of maintenance.

## F.    Cumulative Error

¶ 34 To the extent wife seeks to invoke the doctrine of cumulative error by arguing that the claimed factual errors should be "coupled with the numerous procedural and substantive due process

violations," that doctrine does not apply in civil cases, *see Scott R. Larson, P.C. v. Grinnan*, 2017 COA 85, ¶ 79.

### III. Order Regarding Proceeds from Marital Home

¶ 35    Lastly, wife argues that the magistrate erred when he denied her motion for entry of judgment quantifying the amount due to her after the sale of the marital home. We agree.

¶ 36    We review de novo questions of law, including whether the magistrate properly interpreted a statute or applied the correct legal standard. *Thorburn,* ¶ 26.

¶ 37    A dissolution court "retains jurisdiction to enforce its orders and to ensure complete resolution of the issues addressed in the orders, including marital property division." *Wilson v. Prentiss*, 140 P.3d 288, 291 (Colo. App. 2006). Where the dissolution court entered orders addressing the marital property in question, it has continuing jurisdiction to address that property. *See Mockelmann v. Mockelmann,* 121 P.3d 337, 339 (Colo. App. 2005) (a court has continuing jurisdiction to enforce its orders).

¶ 38    We therefore conclude the magistrate erred by finding he did not have jurisdiction to enter a judgment for the amount wife was owed from the proceeds of the sale of the marital home.

Accordingly, we remand this issue to the district court to consider wife's request; the court may, if it deems it necessary, consider additional evidence.

## IV. Attorney Fees

¶ 39 Both parties request appellate attorney fees under section 14-10-119, C.R.S. 2024, based on the disparity in their incomes and costs pursuant to C.A.R. 39. Because the district court is in a better position than we are to make findings about the parties' financial circumstances, we direct the court to consider both parties' appellate fee requests on remand based on the parties' relative financial circumstances at that time. *See* C.A.R. 39.1; *In re Marriage of Martin*, 2021 COA 101, ¶ 42.

## V. Disposition

¶ 40 We affirm the order in part, reverse it in part, and remand the case for further proceedings.

JUDGE HARRIS and JUDGE GROVE concur.