24CA1041 Marriage of Campbell 06-05-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1041
Arapahoe County District Court No. 23DR31193
Honorable Michelle Jones, Judge

In re the Marriage of

Andrea Yanique Palmer,

Appellee,

and

Bobby Lee Campbell JR,

Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Gomez and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 5, 2025

No Appearance for Appellee

Bobby Lee Campbell JR, Pro Se

¶ 1     In this dissolution of marriage case between Andrea Yanique Palmer (wife) and Bobby Lee Campell Jr. (husband), husband appeals the district court's judgment and challenges the court's rulings concerning parenting time, child support, and attorney fees. We affirm.

## I.     Background

¶ 2     The parties married in 2021 and have two minor children. In 2023, wife petitioned to dissolve the marriage. In May 2024, following a hearing,[1] the district court dissolved the parties' marriage and entered permanent orders.

¶ 3     The district court first found the following facts. From February through May 2023, the parties lived separately in Colorado and that wife was the primary caretaker for the parties'

---

[1] The transcript from the May 2, 2024, hearing was not included in the appellate record. Therefore, we must presume the court's rulings based on the hearing evidence from that day are correct. *See Colo. Ass'n of Pub. Emps. v. Colo. Dep't of Pers.*, 991 P.2d 827, 831 (Colo. App. 1999) (our review is limited to the record presented); *see also In re Marriage of Rivera*, 91 P.3d 464, 466 (Colo. App. 2004) ("It is the obligation of the party asserting error in a judgment to present a record that discloses that error, because a judgment is presumed to be correct until the contrary affirmatively appears.").

two children.  The parties discussed developing a parenting time schedule, but they were unable to reach an agreement.

¶ 4     At the end of May 2023, wife moved to Florida where both she and husband had family.  Wife informed husband that she had a job in Florida and asked for his input.  At the time, husband indicated that he was okay with wife having primary custody of the children and wanted to have as close to equal parenting time as possible.

¶ 5     The district court then divided the marital estate.  The court found that the parties were not married for long and, therefore, could leave the marriage in similar positions where both had the ability to work, earn funds, and not be burdened with substantial marital property or debt.  As relevant here, the court ordered a parenting time schedule that accommodated wife's relocation to Florida, ordered husband to pay child support both retroactively and in the future, and ordered husband to pay $5,000 of wife's attorney fees.

## II.    Evidence Admission and Due Process Violation

¶ 6     Husband challenges the district court's refusal to admit evidence allegedly critical to his case.  He also asserts that the

court's refusal to consider this evidence, as a sanction for noncompliance with the rules, denied him due process. We are unable to review the court's rulings on these issues because husband did not designate the transcript of the May 2 hearing at which the court heard evidence and issued its ruling. As the appellant, it was his responsibility to "include in the record transcripts of all proceedings necessary for considering and deciding the issues on appeal." C.A.R. 10(d)(3). Consequently, husband's failure to include the May 2 transcript as part of the appellate record requires us to presume that the district court's findings and conclusions are correct. *See In re Marriage of Dean*, 2017 COA 51, ¶ 13 ("Where the appellant fails to provide . . . a transcript, the reviewing court must presume that the record supports the judgment."); *In re Marriage of Beatty*, 2012 COA 71, ¶ 15 (same); *see also McCall v. Meyers*, 94 P.3d 1271, 1272 (Colo. App. 2004) ("A party cannot overcome a deficiency in the record by statements in the briefs.").

¶ 7 While we recognize that husband appears pro se, he is bound by the same rules of procedure as attorneys. *See Yadon v. Southward*, 64 P.3d 909, 912 (Colo. App. 2002); *see also Dean*,

3

¶ 12; *Rosenberg v. Grady*, 843 P.2d 25, 26 (Colo. App. 1992) ("A pro se litigant who chooses to rely upon his own understanding of legal principles and procedures is required to follow the same procedural rules as those who are qualified to practice law and must be prepared to accept the consequences of his mistakes and errors."). Accordingly, we affirm the court's rulings on these issues.

## III.    Child Support

¶ 8      Husband next contends that the court's imposition of child support in the amount of $1,100 per month is unreasonable. Because the record supports the court's order, we disagree.

### A.    Additional Facts

¶ 9      The record reflects that the district court acknowledged husband's argument that wife was capable of earning more income than she was currently earning.  But it refused to impute additional income because wife cared for their youngest child, who was less than two years old, full time.  The court also ordered retroactive child support to the time husband was served with the dissolution petition.

¶ 10      Using Worksheet A, the court computed child support for August through November 2023 at $732 per month, and husband

does not challenge that calculation, which is supported by the worksheet in the record. It then computed child support for December 2023, based on wife's incursion of child care expenses, at $1,333. Again, husband does not challenge this calculation, which is supported by the worksheet in the record.

¶ 11 Using the same worksheet, the court calculated child support for January 2024 at $1,615 based on wife's reduced income, a calculation not challenged on appeal. For February 2024, the court noted that wife's child care expense was reduced and ordered child support in the amount of $948. Additionally, for March through May 2024, the court found husband had obtained new employment with a higher income and it rejected wife's argument that the State of Florida considered child support income. Using Worksheet A, it ordered child support in the amount of $1,077.

¶ 12 Finally, the court recognized the additional expense husband would incur to exercise his parenting time with the children in Florida and reduced his child support obligation by $300 per month to $777 per month, beginning in June 2024. The court noted this was a deviation from the child support guidelines and found it was

5

equitable and appropriate to deviate given the "significant and unknown travel expenses that [husband] will incur."

¶ 13    In addition to husband's ongoing child support expense, the district court ordered father to pay his retroactive child support, totaling $10,055, over the ensuing twenty-four months, bringing husband's monthly child support obligation to $1,196 until the retroactive fees were paid in full.

¶ 14    During the court's oral ruling on child support, husband left the virtual proceeding after attempting to object and being told he could not do so during the reading of the court's judgment.

### B.    Standard of Review and Applicable Law

¶ 15    We review a court's maintenance and child support orders, including its determination of the parties' incomes, for an abuse of discretion. *In re Marriage of Tooker*, 2019 COA 83, ¶¶ 12, 21, 27. We defer to the district court's factual findings unless they are clearly erroneous, meaning there is no evidence in the record to support them. *Dean*, ¶ 8; *In re Marriage of Connerton*, 260 P.3d 62, 66 (Colo. App. 2010). But the court's findings of fact and conclusions of law must be "sufficiently explicit" to give us a clear understanding of the basis of its order. *In re Marriage of Gibbs*,

2019 COA 104, ¶ 9; *see also* C.R.C.P. 52.  Factual findings are sufficient if they "identify the evidence which the fact finder deemed persuasive, and determinative of the issues raised."  *In re Marriage of Garst*, 955 P.2d 1056, 1058 (Colo. App. 1998).

¶ 16    Colorado's child support guidelines provide district courts with a framework for determining the amount of child support they should award in dissolution of marriage proceedings.  *In re Marriage of Boettcher*, 2019 CO 81, ¶ 1.  These guidelines establish specific presumptive payment amounts based on the number of children and the parties' combined income.  *Id.*

¶ 17    In calculating child support, the court must consider the parties' financial resources, including each parent's income.  *See* § 14-10-115(2)(b)(II), (V), C.R.S. 2024.  "Income" for purposes of the child support guidelines means the "actual gross income of a parent, if employed to full capacity, or potential income, if unemployed or underemployed."  § 14-10-115(3)(c).  Potential income is used to calculate child support only if the parent is voluntarily unemployed or underemployed.  *See* § 14-10-115(5)(b)(I).  "'Voluntarily' in this context means that the parent is underemployed 'intentionally, of free will.'"  *In re Marriage of Garrett*,

7

2018 COA 154, ¶ 10 (quoting *People v. Martinez*, 70 P.3d 474, 477-78 (Colo. 2003)).  Thus, before the court may impute potential income to a parent, it must find that the parent is "shirking his or her child support obligation by unreasonably forgoing higher-paying, obtainable employment."  *Id.*  A court may not impute income if a parent is unemployed or underemployed because they are caring for a child under the age of twenty-four months for whom the parties owe a joint legal responsibility.  *See* § 14-10-115(5)(b)(I)(B); *see also In re M.E.R-L.*, 2020 COA 173, ¶ 34 (declining to impute any income to wife because she cared for a child under the age of two).

C.     Analysis

¶ 18     We discern no abuse of discretion in the court's child support orders because they are supported by the record, which shows that the court followed the child support guidelines by considering the parties' varying incomes and child care expenses.  *See Boettcher*, ¶ 1; *see also* § 14-10-115(2)(b)(II), (V) (in calculating child support, the court must consider the parties' financial resources, including each parent's income).

¶ 19    Additionally, in rejecting husband's argument that wife should have additional income imputed when determining his child support obligations, the district court correctly reasoned that wife was caring for a child under twenty-four months.  *See* § 14-10-115(5)(b)(I)(B); *see also M.E.R-L.*, ¶ 34.  Moreover, to the extent husband challenges the court's ruling ordering him to pay retroactive child support, we discern no error and conclude it is consistent with section 14-10-115(2)(a), under which a court may order a party to pay child support for the time before the entry of a support order back to the date the dissolution petition was filed.

¶ 20    Furthermore, we reject husband's assertion that the court never considered his expenses at all.  The record contains numerous worksheets showing otherwise, and the court's ruling departing from the guidelines that reduced his monthly child support payment was specifically based on the significant travel expenses he would incur in exercising parenting time in the future.

¶ 21    Finally, we reject husband's assertion that the court failed to consider the best interests of the children in its child support order.  Husband argues that an excessive child support burden would negatively impact his ability to provide for his children.  We disagree

because, as discussed above, the court utilized Worksheet A and considered the parties' incomes and expenses when determining child support and recognized that wife was the children's primary caretaker. Moreover, the court exercised its discretion to deviate from the guidelines and reduce husband's child support obligation, reflecting the importance of the children maintaining a close relationship with their father. Under these circumstances, we cannot say that the court failed to consider the children's best interests.

¶ 22    Accordingly, we affirm the court's child support orders.

## IV.   Attorney Fee Sanction

¶ 23    Husband next contends that the court abused its discretion in ordering him to pay a portion of wife's attorney fees because he represented himself and the court was biased. We disagree.

### A.   Additional Facts

¶ 24    The court heard evidence concerning wife's attorney fee request at the May 2 hearing and issued its oral ruling on May 24. According to the court's order, wife asked that husband be ordered to pay all of her attorney fees. The court ordered husband to pay $5,000 of wife's attorney fees. It first found there was no significant

10

disparity in income between the parties to support equalizing the footing of each party or allocating attorney fees based on section 14-10-119, C.R.S. 2024. Instead, it noted that wife's initial request for attorney fees stemmed from husband's repeated and willful disregard for court orders and procedures.

¶ 25 Turning to section 13-17-102(4), C.R.S. 2024, the court agreed that husband, as a self-represented party, did not initially know that some of his actions were frivolous. But it ultimately found that he knew or reasonably should have known that he should not have filed some of his later motions or requests. For example, husband failed to respond to discovery requests even after the court entered orders denying the abduction prevention measures that he requested, and husband consistently failed to comply with many procedural orders and scheduling requests. The court found that approximately one-fourth of the costs wife incurred in attorney fees were solely related to conduct that husband clearly knew or should have known was "vexatious in failing to move this case forward."

B. Standard of Review and Applicable Law

¶ 26 We review a district court's award of attorney fees for an abuse of discretion. *See In re Estate of Shimizu*, 2016 COA 163, ¶ 15. A

11

court abuses its discretion when it misapplies the law or acts in a manifestly arbitrary, unreasonable, or unfair manner. *Id.* But we review de novo whether the court properly applied the law. *See In re Marriage of Gallegos*, 251 P.3d 1086, 1087 (Colo. App. 2010).

¶ 27 A court may assess reasonable attorney fees against a party when it finds that the party brought an action that lacked substantial justification. § 13-17-102(4). But when a party is not represented by an attorney, the court must also find that "the party clearly knew or reasonably should have known" that the action "was substantially frivolous, substantially groundless, or substantially vexatious" before it may assess attorney fees against that pro se party. § 13-17-102(6). Absent this finding, an order "awarding attorney fees cannot stand." *Artes-Roy v. Lyman*, 833 P.2d 62, 63 (Colo. App. 1992).

## C. Analysis

¶ 28 We discern no abuse of discretion in the court's attorney fee order for two reasons.

¶ 29 First, the record shows that the court considered husband's actions in light of his pro se status, contrary to his argument. The record shows the court did not believe husband's conduct was

12

substantially frivolous, groundless, or vexatious in the beginning. For example, the court noted husband's filing of a petition for allocation of parental responsibilities instead of a petition for divorce or dissolution of marriage, a reflection of his pro se status. Husband also filed a motion for abduction prevention measures, despite the facts that he knew where the parties' children were and that he had discussed the relocation with wife before the move.

¶ 30 Second, the record shows the court sanctioned husband for actions he knew or reasonably should have known were frivolous and vexatious, not because he appeared pro se. Specifically, the court found that husband failed to respond to reasonable discovery requests. It also noted that even after it had entered orders denying his request for abduction prevention measures, husband continued to fail to comply with court orders and failed to schedule and attend mediation with wife. Thus, it was husband's failure to adhere to court orders and procedures that led the district court to order him to pay $5,000 of wife's attorney fees.

¶ 31 Finally, we do not address husband's undeveloped claim that the court was biased in ordering father to pay $5,000 for "Palmer attorney." *See, e.g., Woodbridge Condo. Ass'n v. Lo Viento Blanco,*

*LLC*, 2020 COA 34, ¶ 41 n.12 ("We don't consider undeveloped and unsupported arguments."), *aff'd*, 2021 CO 56.

¶ 32     Accordingly, we affirm the court's attorney fee award.

## V.     Relocation

¶ 33     Husband lastly contends that the district court abused its discretion by failing to consider the fact that husband could not relocate to another state given his obligations to his older children from a previous relationship, who resided in Colorado.  Husband also argues that relocating to Florida was not in the children's best interest because it significantly limited his ability to maintain a meaningful relationship with them.  We are not persuaded.

### A.     Additional Facts

¶ 34     We presume that the following facts set forth in the court's order are correct because husband did not designate the May 2 hearing at which the court heard the evidence.  The court ordered wife to be the children's primary caretaker.  It found that the children had integrated into their new Florida community and that husband had inconsistently been involved in the children's lives.  The court also found that husband traveled to Florida to visit his

family after wife's relocation but had not attempted to see his children while he was there.

¶ 35    The court then implemented a three-step parenting plan for husband moving forward to help husband maintain a relationship with the children.  First, husband was required to spend one weekend in Florida per month, to see his children, for three months in a row.  After compliance with step one, then parenting moved to step two, consisting of an allocation of parenting time during school breaks, holidays, and summers.  Following compliance with step two, husband would receive additional parenting time over school holidays in Colorado.  The court also created a set schedule for video contact between the children and the parent who was not exercising parenting time.

### B.    Standard of Review and Applicable Law

¶ 36    We review the court's relocation decision for an abuse of discretion, *see In re Marriage of Ciesluk*, 113 P.3d 135, 148 (Colo. 2005), meaning that we will not disturb the decision unless it is manifestly arbitrary, unreasonable, or unfair. *Gibbs*, ¶ 8.  We exercise every presumption that supports upholding the court's

decision. *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007).

¶ 37    When a parent's relocation is requested prior to permanent orders, the court must fashion a parenting plan that takes the planned locations of the parties and their proximity to each other into account. § 14-10-124(1.5)(a)(VIII), C.R.S. 2024; *Spahmer v. Gullette*, 113 P.3d 158, 161-64 (Colo. 2005) (court must fashion a parenting plan that can be exercised with the parties living in different states, if that is their stated intention). A court does not have the authority to order a party to live in a particular location. *Spahmer*, 113 P.3d at 162.

¶ 38    When allocating parenting time, the court must focus on the children's best interests, giving paramount consideration to their safety and physical, mental, and emotional conditions and needs. *See* § 14-10-123.4(1)(a), C.R.S. 2024; § 14-10-124(1.5), (1.7); *see also In re Parental Responsibilities Concerning M.W.*, 2012 COA 162, ¶ 16. In making this determination, the court must consider (1) the wishes of the child's parents as to parenting time; (2) the interaction and interrelationship of the child with his or her parents and any other person who may significantly affect the child's best interests;

(3) any report of domestic violence; (4) the child's adjustment to his or her home, school, and community; (5) the ability of the parties to encourage the sharing of love, affection, and contact between the child and the other party; (6) whether the past pattern of involvement of the parties with the child reflects a system of values, time commitment, and mutual support; (7) the physical proximity of the parties to each other as it relates to the practical considerations of parenting time; and (8) the ability of each party to place the needs of the child ahead of his or her own needs. § 14-10-124(1.5)(a).

## C. Analysis

¶ 39 We begin by noting that we must presume the May 2 transcript supports the court's factual findings. *See Dean,* ¶ 13. In doing so, we discern no error in the court's ruling. The record shows that the court considered both parties' circumstances when fashioning the parenting plan. Wife attempted to co-parent with husband during her time in Colorado, following the parties' separation. The district court found that husband's "lack of interest and lack of response to a set schedule" has "caused the children to have a better interaction, and bond, with [m]other." The

17

court also found that despite her treatment by husband, wife continued to make "significant attempts to continue to share the relationship the children have with their father and to encourage that relationship." Moreover, wife had already informed husband of her relocation at the time the district court entered the parenting time order. *See Spahmer*, 113 P.3d at 164 (reversing a parenting time order that required a mother to remain in Colorado even though she had told both the father and the trial court of her intentions to relocate to Arizona). Wife told husband that she had a job in Florida and asked for his input. At the time, husband indicated that he was okay with wife having primary custody of the children and wished to have as close to equal parenting time as possible. After wife moved to Florida, husband travelled to Florida to visit family, but he made no attempt to visit the children. Accordingly, we discern no error in the court's ruling.

## VI. Disposition

¶ 40    The judgment is affirmed.

JUDGE GOMEZ and JUDGE MEIRINK concur.

18