25CA0587 Parental Resp Conc EGS 10-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0587
City and County of Denver District Court No. 14DR2278
Honorable Stephanie L. Scoville, Judge

---

In re the Parental Responsibilities Concerning E.G.S., a Child,

and Concerning Rebecca C. Sposato,

Appellee,

and

Gregory M. Majersky,

Appellant,

and

Denver Department of Human Services,

Intervenor-Appellee.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE JOHNSON
Harris and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

---

No Appearance for Appellee

Gregory M. Majersky, Pro Se

Michiko Ando Brown, City Attorney, Lara Delka, Assistant City Attorney, Denver, Colorado, for Intervenor-Appellee

¶ 1     Gregory M. Majersky (father) appeals from the district court's adoption of the magistrate's order modifying child support. We affirm.

## I.     Background

¶ 2     Father and Rebecca C. Sposato (mother) have one child, who was born in 2013. In October 2014, the district court allocated parental responsibilities as to the child. Following a series of child support modifications, as of October 2018, father was required to pay mother child support in the amount of $77 per month. In September 2023, father moved to modify child support based on his recent job loss.

¶ 3     Following a hearing, a district court magistrate found that substantial and continuing changed circumstances existed, warranting a modification of child support. In the resulting modification, mother was ordered to pay father $351 per month in child support.

¶ 4     In formulating the new child support order, the magistrate found that mother earned $8,213 per month, whereas father had lost his well-paying job in the information technology (IT) industry in March 2023.

¶ 5     The magistrate was skeptical of mother's vocational expert, who testified that father could earn between $70,000 and $120,000 per year going forward.  In particular, the magistrate expressed concern about the impact of father's age and developments in artificial intelligence on his job prospects.  Accordingly, the magistrate used father's current, part-time wage of $18.22 per hour to calculate his income.  But the magistrate disagreed that father's income should be based solely on the twenty hours per week that he was currently working, impliedly finding that father was voluntarily underemployed and imputing to father an additional twenty hours per week of income at his current wage.

¶ 6     After father petitioned for district court review, the reviewing district court judge adopted the magistrate's order.

## II.     Standard of Review and Applicable Law

¶ 7     Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review.  *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22.  We must accept the magistrate's factual findings unless they are clearly erroneous, meaning that they have no support in the record.  *In re Marriage of Young*, 2021 COA 96, ¶ 8.  But we review de novo questions of law,

2

including whether the magistrate applied the correct standards in determining child support. *See Sheehan*, ¶ 22; *Young*, ¶¶ 7-9.

¶ 8     When determining child support, the court considers a party's actual gross income or, if that party is voluntarily unemployed, the party's potential income. § 14-10-115(3)(c), (5)(b)(I), (7)(a)(I), C.R.S. 2025; *People v. Martinez*, 70 P.3d 474, 477 (Colo. 2003). Voluntary underemployment means that the party is shirking a financial obligation "by unreasonably [forgoing] higher paying employment that he or she could obtain." *Martinez*, 70 P.3d at 476.

¶ 9     "[P]otential income" is described as the amount a party could earn from a full-time job commensurate with the party's demonstrated earning ability. *People in Interest of A.R.D.*, 43 P.3d 632, 636-37 (Colo. App. 2001). Whether potential income should be imputed to a party is a mixed question of fact and law, and the factual findings of the lower court are entitled to deference on review if supported by the record. *Martinez*, 70 P.3d at 480.

### III.     Imputation of Income

¶ 10    Father argues that under *Martinez*, 70 P.3d at 477-81, the magistrate was prohibited from imputing any income to him

3

because he had involuntarily lost his job. But we disagree, because father misreads *Martinez's* holding.

¶ 11     Nowhere in that case did the supreme court prohibit the imputation of income to a parent who had been involuntarily separated from their job. *See id.* Instead, *Martinez* held that a parent should not be imputed income solely because that parent was terminated for their own misconduct. *Id.* at 480-81. The supreme court directed district courts to examine multiple factors when assessing whether a parent was unreasonably foregoing higher paying employment. *Id.* Such factors include the availability of jobs, the parent's post-termination conduct and job search efforts, and the parent's education, training, and skills. *Id.* at 480.

¶ 12     Here, the magistrate considered such factors when, based on father's age and the impact of artificial intelligence on the IT industry, she rejected the vocational expert's conclusion that father could earn between $70,000 and $120,000 annually and instead used father's current hourly rate of $18.22 per hour to determine his income.

¶ 13     The magistrate also implicitly found that father could obtain full-time employment when she specifically "reject[ed] only

4

calculating his income based upon [twenty] hours" per week and instead determined his potential income based on forty hours per week. *See People in Interest of C.L.T.*, 2017 COA 119, ¶ 36 (recognizing that the court's findings may be implicit in its ruling). And contrary to father's contentions, nothing in *Martinez* prohibited the magistrate from imputing to him income on a full-time basis. *See Martinez*, 70 P.3d at 477-81; *A.R.D.*, 43 P.3d at 636-37.

¶ 14    Citing evidence of his inability to secure full-time employment, father also suggests that the magistrate's decision to impute full-time income to him was unsupported by the record.

¶ 15    Father included a transcript of the hearing before the magistrate in his appellate record. But the order of the reviewing district court judge indicates, and father concedes, that a hearing transcript was not provided to the reviewing district court judge upon the filing of father's petition for review.

¶ 16    When a hearing transcript that was not provided to the district court for its review is included in the appellate record, we may not consider it. *In re Marriage of Dean*, 2017 COA 51, ¶ 14. Rather, we are limited to the record that was before the district court. *See In re Marriage of Rivera*, 91 P.3d 464, 466 (Colo. App. 2004) (because its

review was limited to the record considered by the district court, a division of this court only considered the party's legal arguments). Just as the district court did, we too must presume, absent a transcript, that the evidence supports the magistrate's factual findings. *See In re Marriage of Beatty*, 2012 COA 71, ¶ 15. Thus, we are precluded from considering any challenges to those factual findings. *See Dean,* ¶ 14; *Rivera*, 91 P.3d at 466.

¶ 17 Father suggests that we should overlook his failure to provide a transcript to the district court because the district court had access to the recording of the hearing. But father has not cited any legal authority in support of his position that we may ignore the magistrate rules simply because a recording may have been available. *See* C.R.M. 7(a)(9) ("The failure of the petitioner to file a transcript of the proceedings before the magistrate is not grounds to deny a petition for review but, under those circumstances, the reviewing judge shall presume that the record would support the magistrate's order.").

¶ 18 In sum, we disagree that the magistrate erred by imputing to father a full-time income.

## IV. Evidentiary Rulings

¶ 19     We next consider and reject father's assertion that the magistrate erred by making certain evidentiary rulings during the child support modification hearing. Specifically, father contends that the magistrate erroneously admitted the report of mother's vocational expert and other unspecified exhibits introduced by mother.

¶ 20     Again, we are hampered by father's failure to provide a transcript to the reviewing district court judge, and we may not consider the transcript of the proceedings that father subsequently included in the appellate record. *See Dean*, ¶ 14; *Rivera*, 91 P.3d at 466. Accordingly, like the district court, we are unable to ascertain what exhibits were admitted at the modification hearing and what objections, if any, father made to the admission of those exhibits. Therefore, we must presume that the missing transcript supports the magistrate's admission of any exhibits. *See* C.R.M. 7(a)(9).

¶ 21     Even if we were permitted to consider the transcript of the hearing, father has failed to articulate any prejudice arising from the alleged admission of the vocational expert's report given that the magistrate rejected the expert's opinion as to father's potential

7

income.  *See People in Interest of A.C.*, 170 P.3d 844, 845 (Colo. App. 2007) (an alleged error, without a valid allegation of prejudice, is not grounds for reversal).  And while father also alleges that the magistrate erred by admitting mother's other exhibits, he has failed to identify what those exhibits were or otherwise explain why their alleged admission was in error beyond a reference to C.R.C.P. 10, which does not govern the admissibility of exhibits.  Therefore, we decline to further address father's contentions.  *See Holley v. Huang*, 284 P.3d 81, 87 (Colo. App. 2011) (refusing to consider "bald assertions of error that lack any meaningful explanation").

## V.    Conclusion

¶ 22    The order is affirmed.

JUDGE HARRIS and JUDGE SCHOCK concur.