The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 1, 2025

**2025COA44**

**No. 24CA0357, Marquez v. Schaefer— Firearms — Unlawful Acts — Misdemeanor Crime of Domestic Violence — Conviction for Violating a Municipal Ordinance**

As a matter a first impression, a division of the court of appeals concludes that 18 U.S.C. § 921(a)(33)(A)(i)'s definition of a "misdemeanor crime of domestic violence" includes a conviction for domestic violence assault under a municipal ordinance that authorizes a potential sentence of up to one year in jail, even though the municipal code does not expressly classify the offense as a misdemeanor. Accordingly, the division concludes that the Colorado Bureau of Investigation did not err by denying the plaintiff's application to purchase a firearm based on their municipal domestic violence assault conviction.

Court of Appeals No. 24CA0357
City and County of Denver District Court No. 23CV32928
Honorable Andrew P. McCallin, Judge

Andrew Marquez,

Plaintiff-Appellant,

v.

Chris Schaefer, in his official capacity as Director and Colorado Bureau of Investigation,

Defendants-Appellees.

ORDER AFFIRMED

Division VI
Opinion by JUDGE SCHUTZ
Welling and Kuhn, JJ., concur

Announced May 1, 2025

Allen Vellone Wolf Helfrich & Factor PC, Jackson K. Gardner, Jason R. Wareham, Denver, Colorado, for Plaintiff-Appellant

Philip J. Weiser, Attorney General, Christopher Diedrich, Senior Assistant Attorney General, Denver, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Andrew Marquez, appeals the district court's order dismissing the complaint that he brought pursuant to C.R.C.P. 106(a)(4) against defendant, the Colorado Bureau of Investigation (CBI),[1] after it denied his application to purchase a firearm because of his criminal conviction under a municipal ordinance. Marquez contends that his domestic violence assault conviction under a Denver municipal ordinance should not have precluded him from purchasing a firearm. The resolution of this question requires us to determine, for the first time in a published Colorado opinion, whether an act of domestic violence that results in a conviction for violating a municipal ordinance may constitute a "misdemeanor under . . . local law" as used in 18 U.S.C. § 921(a)(33)(A)(i), thereby precluding the convicted person from buying a firearm. The district court answered this question affirmatively. We do too and therefore affirm.

## I.     Statutes at Issue

¶ 2     At the outset, we address a discrepancy in the description of the statutes at issue in this litigation. The CBI's letter denying

_____

[1] Marquez sued the CBI and its director, Chris Schaefer, in his official capacity; we collectively refer to the defendants as the CBI.

Marquez's administrative appeal stated the CBI denied his firearm application based on 18 U.S.C. § 922(g)(9) (prohibiting individuals convicted of a misdemeanor crime of domestic violence from receiving "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce").  Throughout the district court litigation, however, the CBI relied on and argued that its denial was authorized by § 922(d)(9) (prohibiting the sale of "any firearm or ammunition" to any person who "has been convicted in any court of a misdemeanor crime of domestic violence").  The district court also referred to § 922(d)(9) in its order dismissing the complaint.

¶ 3     In Marquez's opening brief on appeal in this court, his counsel refers primarily to § 922(g)(9).  In its answer brief, the CBI relies on § 922(d)(9).  In his reply, however, Marquez changes course and refers exclusively to § 922(d)(9).

¶ 4     Ultimately, whether § 922(d)(9) or § 922(g)(9) barred Marquez's effort to purchase a firearm depends on whether his municipal ordinance conviction constitutes a misdemeanor under local law, as set forth in § 921(a)(33)(A)(i).  Neither party argues that our interpretation of that section should be different under § 922(d)(9)

as compared to § 922(g)(9).  Therefore, for clarity we use "§ 922" to encompass both § 922(d)(9) and § 922(g)(9).

## II.    Background and Procedural History

### A.    Incident and Conviction

¶ 5      In 1997, Marquez and his wife got into an argument during which Marquez repeatedly struck her forehead and also inadvertently injured their minor child when he slammed a door during the outburst.

¶ 6      Marquez was arrested and charged in the Denver County Court[2] with assault, disturbing the peace, and wrongs to minors. He eventually pleaded guilty to disturbing the peace and assault, admitting that the assault charge was predicated on an act of domestic violence.[3]  In 1997, the assault conviction carried a potential sentence of up to one year in jail and fines of up to $999, but the offense was otherwise unclassified.  *See* Denver Rev. Mun. Code § 1-13(a) (1997).

---

[2] The Denver County Court is both a municipal and state court. The parties occasionally refer to it as either the "municipal court" or the "county court."  We refer to it as the county court.

[3] The City Attorney's Office dismissed the wrongs to minors charge.

¶ 7      The court sentenced Marquez to probation, anger management and substance abuse classes, drug and alcohol testing, and useful public service.  Marquez successfully completed probation without issue.

### B.      County Court Hearing and CBI Appeal

¶ 8      In 2021, Marquez filed a Crim. P. 35(c) petition in the Denver District Court based on newly discovered evidence and alleging an unconstitutional plea.  At a hearing on his petition, Marquez conceded that the underlying conviction was based on a municipal ordinance violation rather than a violation of a state statute.  Based on this concession, Marquez converted his Crim. P. 35(c) petition into a motion to withdraw his plea under C.M.C.R. 235, and the district court transferred the matter to the county court, where it was set for a hearing on August 1, 2023.

¶ 9      A month before the hearing, Marquez applied to purchase a firearm.  The CBI Firearms InstaCheck Unit, which conducts background checks for firearm purchases in Colorado, denied his application due to his 1997 municipal domestic violence assault conviction.  On July 11, Marquez timely filed an administrative appeal to the CBI using its online portal.  That same day, a CBI

representative messaged Marquez's counsel through the portal and asked him to review statutory changes made to the federal Violence Against Women Act. Responding through the portal, counsel supplemented the appeal to include the argument that a conviction under a municipal ordinance does not disqualify Marquez from purchasing a firearm and that § 921's amended language should not be applied retroactively to his conviction. The CBI representative did not respond.

¶ 10    On August 1, after the hearing, the county court denied Marquez's motion to withdraw his plea. The court concluded that his request to withdraw his guilty plea was time barred. The court also rejected Marquez's argument that he had not been adequately advised about the collateral consequences of his guilty plea, including its impact on his ability to purchase a firearm. The court then engaged in the following exchange with Marquez's counsel:

> [Court]: But let's say that it's not time[ ] barred. . . . So the [c]ourts wouldn't be obligated to advise Mr. Marquez about the collateral consequences, because that law didn't exist at the time.
>
> And second, I don't believe, by definition, that this qualifies as a misdemeanor. It's an unclassified Municipal Ordinance violation.

5

. . . .

[Counsel]: Okay. And to clarify the portion in the [r]uling you already made, Your Honor, so you would not consider this a misdemeanor conviction within your court? . . .

[Court]: I would not, based on the Federal definition of misdemeanor that I read.

[Counsel]: Okay. Thank you, Your Honor. . . .

[Court]: . . . [A]s a Public Defender, doing criminal defense in Denver[,] I don't recall anyone referring to Municipal Ordinance violations as misdemeanors.

¶ 11    Shortly after the hearing, Marquez's counsel used the online messaging portal to advise the CBI of the county court's statements and later provided the CBI with a transcript of the hearing.

¶ 12    On September 6, the CBI denied Marquez's appeal, citing § 921(a)(33)(A)(i)'s definition of a "misdemeanor crime of domestic violence." The CBI reasoned that Marquez's municipal domestic violence assault conviction constituted a misdemeanor under local law, and therefore his purchase of a firearm was precluded by § 922.

## C.    District Court Review

¶ 13    Marquez timely filed a C.R.C.P. 106 complaint in the district court, requesting that it review and overturn the CBI's denial of his

6

firearm application. As relevant here, Marquez asserted that the CBI acted contrary to the Colorado Administrative Procedure Act by violating his constitutional right to bear arms and otherwise acting contrary to law.[4] *See* § 24-4-106(7)(b)(III), (IX), C.R.S. 2024 (requiring reversal of an agency action that is contrary to a constitutional right or otherwise contrary to law).

¶ 14    The CBI moved to dismiss Marquez's claims under C.R.C.P. 12(b)(5), arguing that the plain language of § 921(a)(33)(A)(i) and § 922 includes a conviction for violating a municipal ordinance if the crime is predicated on an act of domestic violence.

¶ 15    In response, Marquez argued that Denver, as a home rule city, has the authority to classify its municipal ordinance violations, and because the municipal code does not expressly classify domestic violence assault as a misdemeanor, the CBI erred by concluding that the conviction prohibited him from purchasing a firearm. After the CBI filed its reply, Marquez filed a motion requesting that the district court certify the administrative record.

---

[4] We do not address Marquez's remaining claims because they are not before us.

¶ 16    On January 12, 2024, without addressing the motion to certify the record, the district court granted the CBI's motion to dismiss. The district court concluded that Marquez's claims presented a question of law that could be resolved by looking to the plain language of § 921(a)(33)(A)(i) and § 922. Reasoning that the statutes encompassed criminal convictions for violations of municipal ordinances, the district court dismissed Marquez's complaint.

¶ 17    Marquez timely appealed the district court's order. He argues that the district court reversibly erred by (1) summarily dismissing his complaint without certifying the administrative record; (2) concluding that his municipal ordinance conviction constituted a misdemeanor under local law; and (3) summarily dismissing his complaint without addressing his constitutional arguments. We address these contentions in turn.

III.    Dismissal in the Absence of the Administrative Record

¶ 18    Marquez first argues that the district court erred by summarily dismissing his complaint without first certifying the administrative record because the record contained information that materially affected the outcome of his appeal. We disagree.

8

## A. Standard of Review

¶ 19 We review a district court's application of the Colorado Rules of Civil Procedure de novo. *Defend Colo. v. Polis*, 2021 COA 8, ¶ 47. Similarly, "[w]e review de novo the district court's interpretations of statutes and municipal ordinances." *Asphalt Specialties, Co. v. City of Commerce City*, 218 P.3d 741, 745 (Colo. App. 2009).

## B. Application

¶ 20 Marquez's motion to certify the record designated, among other documents, the CBI's policies and internal communications concerning applications to purchase a firearm, generally, and Marquez's application, specifically. Postulating that such documents must exist, he asserts that they would be relevant to the issues raised in his complaint. Thus, he argues, the district court erred by ruling on the motion to dismiss without first certifying the record.

¶ 21 The CBI argues that Marquez invited any error because he did not file a motion to certify with his complaint but waited until after

9

the motion to dismiss was fully briefed.[5]  *See* C.R.C.P. 106(a)(4)(III) ("If the complaint is accompanied by a motion and proposed order requiring certification of a record, the court shall order the defendant . . . to file with the clerk on a specified date, the record . . . with a certificate of authenticity.").  Alternatively, the CBI argues that the district court properly decided the motion to dismiss without certifying the record because the complaint only presented questions of law that could be resolved without reference to the record.

¶ 22    We agree that the district court properly addressed the CBI's motion to dismiss without first certifying the administrative record because the interpretation of the relevant municipal ordinances and statutes presented issues of law that could be resolved without reference to the record of the administrative proceedings.

¶ 23    The purpose of C.R.C.P. 12(b)(5) is to permit the summary dismissal of claims that lack legal merit.  *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911 (Colo. 1996).  In the context of C.R.C.P.

---

[5] Although Marquez did not file a separate motion to certify the record with his complaint, we note that the complaint itself includes a lengthy paragraph entitled "Designation of Record."

10

106(a)(4), the district court may dismiss a claim without consideration of the record if the issue presented is one of law, rather than one of fact. *Defend Colo.*, ¶¶ 56-57. All of Marquez's claims depended on the interpretation and application of federal statutes and Denver municipal ordinances. Thus, the issues presented were ones of law, not fact.

¶ 24    We are not persuaded by Marquez's conclusory allegations that there must be policies, training materials, guidelines, or legal memoranda discussing the interpretation and application of the controlling federal statutes. In the first instance, Marquez points to no specific documents that fit these broad descriptions, much less documents that were provided to the CBI for its consideration in resolving this appeal. The purpose of certifying an administrative record is to allow the reviewing court to examine the specific evidence that was provided to the agency for the court's consideration in its resolution of the appeal, not to potentially discover documents that the movant speculates may exist. *See* C.R.C.P. 106(a)(4)(IV) (the purpose of designating the record is to obtain the necessary documents essential to a complete understanding of the controversy).

11

¶ 25    Moreover, even if such documents existed, they would be irrelevant to the interpretation of the subject ordinances or statutes. The district court's interpretation of the plain language of a statute or ordinance, like ours, is controlled by language used in the statute, not by an agency's internal memoranda or legal opinions interpreting the law. *Int'l Truck & Engine Corp. v. Colo. Dep't of Revenue*, 155 P.3d 640, 642 (Colo. App. 2007) ("We need not defer to the agency's interpretation unless a statutory term is reasonably susceptible of more than one interpretation, and the agency has employed its expertise to select a particular interpretation."); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (Federal courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."). Thus, the district court did not err by deciding these issues without first certifying the administrative record.

¶ 26    Having concluded that the district court did not err by deciding the motion to dismiss without certifying the record, we do not address the CBI's invited error argument.

¶ 27    Marquez next contends that the district court reversibly erred by concluding that his domestic violence assault conviction was a misdemeanor under § 921(a)(33)(A)(i) and § 922.  The CBI argues that the statutes clearly encompass a violation of local law, including a conviction for violating a municipal ordinance, if the factual basis of the crime includes an act of domestic violence.  We conclude that the district court correctly determined that Marquez's domestic violence assault conviction was within the ambit of § 921(a)(33)(A)(i) and § 922.

A.    Standard of Review and Applicable Law

¶ 28    The meaning of a statutory term presents a question of law that we review de novo.  *People v. Martinez*, 70 P.3d 474, 477 (Colo. 2003).  When construing a statute, we seek to effectuate the enacting body's intent.  *Galvan v. Spanish Peaks Reg'l Health Ctr.*, 98 P.3d 949, 950 (Colo. App. 2004).  "To determine legislative intent, we must look primarily to the language of the statute itself and then give effect to the statutory terms in accordance with their commonly accepted meaning."  *Id.*  We read the statute as a whole

13

and give harmonious and sensible effect to all its parts, when possible. *Martin v. People*, 27 P.3d 846, 851 (Colo. 2001).

¶ 29 When a legislative body amends a statute, we presume it intended the amendment to effectuate a change. *Corsentino v. Cordova*, 4 P.3d 1082, 1091 (Colo. 2000). "This presumption can be rebutted by showing that the legislature only intended to clarify an ambiguity with the amendment." *Id.*

## B. Preservation

¶ 30 To properly preserve an argument for appeal, a party must present "the sum and substance of the argument" to the district court. *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 (citation omitted). The CBI contends that Marquez failed to preserve his argument that his firearm purchase was not barred by the current version of § 921(a)(33)(A)(i) as applied to § 922. We disagree.

¶ 31 In the messaging portal, Marquez requested relief based on the Tenth Circuit Court of Appeals' decision in *United States v. Pauler*, 857 F.3d 1073, 1078 (10th Cir. 2017), arguing that § 922's bar does not apply to convictions under a municipal ordinance. In *Pauler*, the court interpreted the pre-2022 version of § 921(a)(33)(A)(i)

14

(2018) (version effective until Oct. 1, 2022), which defined a misdemeanor conviction for domestic violence as misdemeanors "under Federal, State, or Tribal law." *Pauler*, 857 F.3d at 1074. Applying the plain language of this definition, the court concluded that the pre-2022 version of the statute did not include violations of local law, and therefore § 922's bar did not apply to convictions for violations of municipal ordinances. But in 2022, Congress amended § 921(a)(33)(A)(i) to expand the definition of the term "misdemeanor crime of domestic violence" to include misdemeanor convictions "under Federal, State, Tribal, or *local* law." Consolidated Appropriations Act of 2022, Pub. L. No. 117-103, sec. 1104, § 921(a)(33)(A)(i), 136 Stat. 921-22 (codified as amended at 18 U.S.C. § 921(a)(33)(A)(i)) (emphasis added).

¶ 32　　A CBI representative responded to Marquez's appeal by contacting his counsel through the portal to advise him of the 2022 amendment. Marquez's counsel provided the following written response:

> [W]e would submit additional argument that the amendment still says "misdemeanor" and does not expressly include or define "municipal ordinance" and therefore a municipal offense should still not be disqualifying. Please

15

supplement our appeal basis with this argument and please let me know if you require an additional submission to preserve this argument in the appeal.

¶ 33 This response presented the sum and substance of Marquez's contention in the administrative appeal. Accordingly, we conclude the response was adequate to preserve his argument that § 921(a)(33)(A)(i) does not apply to violations of municipal ordinances that are not expressly labeled as misdemeanors by the enacting jurisdiction. *See Gebert*, ¶ 25.

## C. Application

¶ 34 Under § 922(d)(9), it is unlawful to sell a firearm to a person who has been convicted in any court of a misdemeanor crime of domestic violence, and under § 922(g)(9), it is also unlawful for a person convicted of such an offense to receive any firearm that has been shipped or transported in interstate or foreign commerce. As previously noted, the 2022 amendment extended the definition of a "misdemeanor crime of domestic violence" to include crimes of domestic violence that are "a misdemeanor under . . . local law." § 921(a)(33)(A)(i). Thus, to comply with § 922, the CBI must deny

16

an application to purchase a firearm if the applicant has been convicted of a domestic violence misdemeanor under local law.

¶ 35 Marquez does not dispute that his conviction for assault arose out of an act of domestic violence. Thus, the controlling question is whether this offense was a "misdemeanor" within the meaning of § 921(a)(33)(A)(i).

¶ 36 Marquez argues that local jurisdictions are free to define offenses as they deem appropriate, and, therefore, Denver — as a home rule city — is authorized to classify its offenses, and such classification controls the scope of how the federal law is applied. He also notes that the Denver District Attorney's Office website distinguishes municipal ordinance violations from misdemeanor crimes. *See* Denver Dist. Attorney's Off., *Types of Crimes*, https://perma.cc/2GYU-YSQV. In amplification of this argument, Marquez points to the county court judge's statement that she did not believe that the violation of a municipal ordinance amounted to a misdemeanor as that term is used in § 921(a)(33)(A)(i) and § 922.

¶ 37 In contrast, the CBI argues the commonly understood scope of the term misdemeanor includes all criminal offenses other than felonies. Thus, the CBI argues, a criminal conviction for violating a

17

municipal ordinance falls within the commonly understood meaning of the term misdemeanor. In addition, the CBI argues this interpretation is consistent with Congress's intent to extend the firearm purchase ban to individuals who commit acts of domestic violence that are criminalized under local law. Finally, the CBI argues that Congress's objective to protect victims of domestic violence would be frustrated by permitting local jurisdictions to effectively avoid the reach of § 922 by not classifying municipal ordinance violations as misdemeanors.

¶ 38 Neither § 921 nor § 922 defines the term "misdemeanor." When a statute does not define a particular term, we apply the statute's words consistent with "their plain and ordinary meanings." *People v. Neustel*, 2023 COA 56, ¶ 6 (quoting *McCoy v. People*, 2019 CO 44, ¶ 37).

¶ 39 Misdemeanors are "crimes that are less serious than a felony and punishable by fine, penalty, forfeiture, or confinement, usually for a period of a year or less." Black's Law Dictionary 1193 (12th ed. 2024); *see also* Merriam-Webster Dictionary, https://perma.cc/ZV3A-MHMQ (defining a misdemeanor as "a crime less serious than a felony"); *see also* 18 U.S.C. § 3559(a)(6)-(8)

18

(dividing misdemeanors into three classes depending on whether a term of incarceration is authorized between five days and a year). In 1997, the Denver municipal code provided that "whenever any section of this code . . . requires, prohibits or declares to be unlawful the doing of an act, any violation of such section is hereby declared to be a criminal violation." Denver Rev. Mun. Code § 1-13 (1997). And, as previously noted, the municipal code specified that a conviction for assault carried with it a potential jail sentence of up to one year. *Id.*

¶ 40 Applying the plain language of the municipal code to the commonly understood meaning of misdemeanor, we agree with the district court's conclusion that Marquez's conviction met the definition of a "misdemeanor crime of domestic violence" under § 921(a)(33)(A)(i) and § 922.

¶ 41 The clear purpose of the 2022 amendment was to expand the scope of offenses covered by § 922. This is consistent with Congress's 1996 amendment of § 921 to extend the existing firearm purchase ban for felony convictions to include misdemeanors. *See* Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-

19

208, sec. 658, § 921(a), 110 Stat. 371-72 (codified as amended at 18 U.S.C. § 921(a)(33)(A)(i)-(ii)).

¶ 42    The 2022 amendment was intended to further extend § 922's reach to those individuals with domestic violence convictions based on the violation of a municipal ordinance, not to simply clarify the statute.  It would be incongruous with this intent to interpret § 921(a)(33)(A)(i) in a way that would effectively delegate to every local jurisdiction the authority to control the scope of § 922's firearm purchase ban by not classifying offenses that authorize a possible jail sentence of up to a year as misdemeanors.  Marquez points to no legislative history or authority to suggest that Congress intended to delegate this type of control of the scope of the firearm purchase ban to local jurisdictions.

¶ 43    We also reject Marquez's reliance on the county court's dicta that municipal ordinance violations are not considered misdemeanors.  The only issue before the county court was whether Marquez established a legal basis to withdraw his guilty plea.  The court rejected that argument on multiple grounds, including that the request to do so was time barred.  The court also noted that the post-2022 version of § 921(a)(33)(A)(i) did not exist at the time of

Marquez's 1997 conviction, and therefore the court that accepted Marquez's guilty plea had no obligation to advise him of any collateral consequence associated with § 921(a)(33)(A)(i). Either of these rulings was sufficient to deny Marquez's motion to set aside his plea. Thus, there was no reason for the court to provide its interpretation of the scope of § 921(a)(33)(A)(i). In any event, the county court's statement has no precedential value and does not prevent us from reaching a contrary conclusion. *See, e.g., People ex rel. Gallagher v. Dist. Ct.*, 666 P.2d 550, 553 (Colo. 1983) (noting that dictum does not become law of the case and is not binding).

## V.    Marquez's Constitutional Arguments

¶ 44    Marquez argues that, even if the district court correctly construed the meaning of the federal statutes and Denver municipal ordinances, it nonetheless erred because it failed to address the substance of his constitutional arguments. The CBI contends that Marquez's constitutional claims are unpreserved and undeveloped. We agree with the CBI.

### A.    Standard of Review

¶ 45    We review a district court's order granting a motion to dismiss de novo. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo.

21

2004). In reviewing a motion to dismiss, we accept all matters of material fact in the complaint as true and view the allegations in the light most favorable to the plaintiff. *Id.*

¶ 46 Statutes are presumed to be constitutional. *People v. Walker*, 75 P.3d 722, 723 (Colo. App. 2002). The party asserting that a statute is unconstitutional must prove its invalidity beyond a reasonable doubt. *Id.*

## B. Preservation

¶ 47 "In civil cases, arguments never presented to, considered by, or ruled upon by a district court may not be raised for the first time on appeal." *Gebert*, ¶ 25. As previously noted, to properly preserve an argument, a party must present the sum and substance of the argument to the district court. *Id.*

¶ 48 In his district court complaint, Marquez alleged that applying § 921(a)(33)(A)(i) to his conviction violated his right to bear arms under the Second Amendment to the United States Constitution and article II, section 13, of the Colorado Constitution. Specifically, he made the following allegations:

> While Colorado and Federal courts have found that the right to bear arms may be reasonably regulated, the [CBI's] restriction of Mr.

22

Marquez's firearms rights contrary to law, the evidence, and the County Court['s purported] ruling, constitutes unreasonable and irrational regulation of that right.

This irrational and unreasonable regulation of Mr. Marquez's rights to possess a firearm violates [a]rticle II, [s]ection 13 of the Colorado Constitution and the Second Amendment of the U.S. Constitution.

As such, [the CBI]'s determination is therefore invalid.

¶ 49 Marquez's opposition to the CBI's motion to dismiss was predicated — almost exclusively — on his argument that the CBI had misinterpreted the meaning and breadth of the term "misdemeanor" under § 921(a)(33)(A)(i) and § 922 and failed to follow the county court judge's statement that the federal statutes did not apply to convictions under this particular Denver municipal ordinance.

¶ 50 After quoting the county court's statements, Marquez's counsel argued as follows:

The Denver County Court's ruling, the court with original jurisdiction over Mr. Marquez's offenses, clearly and unambiguously ruled that Mr. Marquez's offense did not qualify under federal law as a misdemeanor. This left no ambiguity or interpretation to the agency that would allow it to contradict the Court. Thus,

23

the agency acted arbitrarily and capriciously, abused its discretion, and otherwise contrary to law. Thereby, the agency denied Mr. Marquez an important constitutional right, the purchase and/or possession of firearms.

¶ 51 This argument does not assert that § 921 and § 922 are unconstitutional in all their potential applications or as applied to him. And aside from the complaint's conclusory allegation that the statute violated his right to bear arms, Marquez's response did not develop any argument based on the Second Amendment; article II, section 13, of the Colorado Constitution; or any other constitutional provision. Not surprisingly then, the district court did not address or decide whether Marquez asserted a valid constitutional challenge to the statutes in his complaint.

¶ 52 Marquez argues for the first time on appeal that the district court should have denied the motion to dismiss because the CBI failed to affirmatively establish that the prohibitions in § 921(a)(33)((A)(i) and § 922 are "consistent with this Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022). Marquez failed to articulate any argument on this issue before the CBI or the district court, however. And on appeal, he fails to meaningfully develop an

argument that the challenged prohibitions fall outside the nation's tradition of firearm regulation.

¶ 53 Rather, citing *United States v. Bullock*, 679 F. Supp. 3d 501, 537 (S.D. Miss. 2023), *rev'd*, 123 F.4th 183 (5th Cir. 2024), he attempts to justify the omission by arguing that the CBI had the burden to present affirmative evidence on this point and that the district court erred by granting the motion to dismiss in the absence of such an affirmative showing by the CBI. But Marquez made no such argument before the CBI or the district court, whether in his initial complaint or in his response to the CBI's motion to dismiss.

¶ 54 Because Marquez did not raise the issue before the CBI or the district court, and he did not adequately develop it on appeal, we decline to address it further. *See People v. Durapau*, 280 P.3d 42, 49 (Colo. App. 2011) (declining to address perfunctory and conclusory constitutional arguments).

¶ 55 We acknowledge that Marquez argued before the CBI that § 921(a)(33)(A)(i) should not be applied retroactively to his 1997 conviction. It is not entirely clear whether Marquez intended this argument to be grounded on principles of statutory construction or

the constitutional prohibitions against ex post facto legislation. *See* U.S. Const. art. I, § 10, cl. 1; Colo. Const. art. II, § 11. We note, however, that neither his complaint nor his response to the motion to dismiss nor his appellate briefs even cite the ex post facto clauses, much less develop a cogent argument thereunder. Thus, we decline to address this issue further, and we offer no opinion with respect to it.

## VI.   Disposition

¶ 56    The district court's order is affirmed.

JUDGE WELLING and JUDGE KUHN concur.