25CA1331 Marriage of Cantar 05-28-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1331
Douglas County District Court No. 20DR30416
Honorable Daniel Warhola, Judge

---

In re the Marriage of

Mason Barnett Cantar,

Appellant,

and

Victoria Ann Rimmel-Cantar,

Appellee.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

---

Peek Vasquez, LLC, Sean S. Peek, Denver, Colorado, for Appellant

No Appearance for Appellee

¶ 1    In this post-dissolution of marriage case involving Mason Barnett Cantar (father) and Victoria Ann Rimmel-Cantar (mother), father appeals the district court's order adopting the magistrate's modification of parenting time and child support.  We affirm.

## I.    Background

¶ 2    In 2020, the parties' marriage ended.  At that time, they stipulated that mother would be the primary parent for their two children and father would have parenting time every other Friday through Sunday, plus holiday and vacation time.  Father also agreed to pay mother $1,150 in monthly child support.

¶ 3    In early 2023, the parties on their own increased father's regular parenting time to every other Friday night until Tuesday morning.

¶ 4    About a year later, father moved to modify parenting time and child support.  He asked for equal time and a reduction in child support.  At the time, father was retired with a 100% military disability rating.

¶ 5    Following a hearing, the magistrate adopted the parties' 2023 informal agreement, giving father parenting time every other Friday after school until the children's return to school on Tuesday

1

morning, finding that this schedule was in the children's best interests.

¶ 6    The magistrate then found that father's total monthly gross income was $7,903, consisting of $3,980 in military disability benefits, $1,923 in imputed full-time minimum wage income, and $2,000 in rental income.  It was undisputed that mother's monthly gross income was $4,162.  Based on the parties' income and the parenting time schedule, the magistrate modified father's monthly child support obligation to $1,140.

¶ 7    Father petitioned for review, and the district court adopted the magistrate's decision.

## II.    Appellate Standard of Review

¶ 8    Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review, and we must accept a magistrate's factual findings unless they are clearly erroneous.  *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 25; C.R.M. 7(a)(9).  Factual findings are clearly erroneous only if there is no record support for them.  *Thorburn*, ¶ 25.  Legal conclusions, however, are reviewed de novo.  *See In re Marriage of Clark*, 2025 COA 75, ¶ 12.

### III. Modification of Parenting Time

#### A. Relevant Law

¶ 9    A court may modify parenting time whenever doing so would serve the children's best interests.  *See* § 14-10-129(1)(a)(I), C.R.S. 2025.  In making that determination, the court must consider the relevant factors in section 14-10-124(1.5)(a), C.R.S. 2025.  *In re Custody of C.J.S.*, 37 P.3d 479, 482 (Colo. App. 2001).  The court does not need to make findings on every statutory factor, but its findings must be "sufficiently explicit . . . to give the reviewing court a clear understanding of the basis of the order."  *In re Marriage of Pawelec*, 2024 COA 107, ¶ 44.

¶ 10    The court has broad discretion when modifying parenting time.  *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 13.  The court abuses its discretion when it misapplies the law or acts in a manifestly arbitrary, unreasonable, or unfair manner.  *Pawelec*, ¶ 45.  If the order is supported by competent evidence in the record, we will not disturb it.  *In re Marriage of Collins*, 2023 COA 116M, ¶ 8.

## B. Equal Parenting Time Presumption

¶ 11 Father contends that the magistrate erred by denying him equal parenting time. To get there, he says that when two fit parents — both of whom have a fundamental right to raise their children — disagree about parenting time, the magistrate must start with a presumption that equal parenting time is in the children's best interests. We disagree.

¶ 12 Parents have a fundamental right to make decisions concerning the care, custody, and control of their children. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000); *In re Marriage of O'Connor*, 2023 COA 35, ¶ 20. This fundamental liberty interest gives rise to a presumption that fit parents act in their children's best interests, *In re Adoption of C.A.*, 137 P.3d 318, 327 (Colo. 2006), and prohibits judicial interference in the day-to-day child-rearing decisions of the parents. *See Troxel*, 530 U.S. at 72-73 (a state may not infringe on the parents' fundamental right to make child-rearing decisions simply because a state judge believes a "better" decision could be made); *see also In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1134 (Colo. 2010) ("[S]o long as a parent is fit, there will normally be no reason for the

State to second-guess the ability of that parent to make the best decisions concerning the rearing of his or her children.").

¶ 13    But the application of the *Troxel* presumption is limited to parental responsibilities disputes between a fit parent and a nonparent.  *O'Connor,* ¶ 20; *see In re Parental Responsibilities Concerning M.W.,* 2012 COA 162, ¶ 13 (because "[a] parental responsibilities dispute between a [fit] parent and a nonparent is not a contest between equals," the court applies *Troxel* when the parent opposes an allocation of parental responsibilities to a nonparent); *see also Troxel,* 530 U.S. at 65-73 (holding that a Washington statute compelling grandparent visitation over the objection of the widow mother was unconstitutional without giving a presumption that a fit parent acts in her child's best interests); *B.J.,* 242 P.3d at 1130 (setting aside a district court order that improperly granted parenting time to the former foster parents over the objection of the father, without affording him the *Troxel* presumption that his determinations were in the child's best interests); *In Interest of C.T.G.,* 179 P.3d 213, 226 (Colo. App. 2007) (reversing a visitation order based on *Troxel* when the nonparent

stepfather failed to present evidence of special circumstances to justify an order contrary to the parents' wishes).

¶ 14　　In *In re Marriage of DePalma*, 176 P.3d 829 (Colo. App. 2007), the division considered whether to apply *Troxel* in a dispute between two parents and concluded that "the presumption that a parent has a 'first and prior' right to the custody of their child was not implicated." *Id.* at 832; *see Vanderborgh v. Krauth*, 2016 COA 27, ¶ 21 (In *DePalma*, the division "held that the *Troxel* presumption in favor of a fit parent's decisions concerning their child [was] not implicated in a dispute between parents in a dissolution of marriage case."). The division added that when two fit parents disagree, the court must weigh the wishes of both to determine what is in the children's best interests. *Id.* at 832; *see also* § 14-10-124(1.5)(a)(I) (the parents' wishes as to parenting time are relevant to the children's best interests).

¶ 15　　As in *DePalma*, because this case involves a dispute between two fit parents, with the same fundamental parental rights, *Troxel* is not implicated. *See DePalma*, 176 P.3d at 832; *Vanderborgh*, ¶ 21. Nor does Colorado law have a presumption of equal parenting time or otherwise require a court to divide parenting time equally. *See* §

6

14-10-124(1.5)(a) (the district court allocates parenting time in accordance with the children's best interest, and it considers all relevant factors including the statutory factors); *In re Morgan*, 2018 COA 116M, ¶ 17. Instead, when fit parents disagree over the modification of parenting time, the court resolves the dispute by considering the best interest factors in section 14-10-124(1.5)(a), which includes the parents' wishes. *See* § 14-10-129(1)(a)(I); *DePalma*, 176 P.3d at 832.

¶ 16 Because the *Troxel* presumption applies only to fit parent-nonparent disputes, the magistrate was not required to apply it here. Nor did the magistrate have to begin with a presumption of equal parenting time. The magistrate appropriately analyzed the modification motion under the best interests standard. *See* § 14-10-129(1)(a)(I). And because we conclude that the magistrate did not err in declining to apply the *Troxel* presumption or presume equal parenting time, we necessarily reject father's related claim that the failure to apply such presumptions constituted a violation of due process or equal protection.

### C. Constitutionality of Sections 14-10-124 and 14-10-129

¶ 17    Father also contends that sections 14-10-124 and 14-10-129 are unconstitutional "as drafted."

¶ 18    "[A] party seeking review of a magistrate's decision must raise a particular issue in the district court so that the district court may have an opportunity to correct any error that may have been made by the magistrate." *People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006).  Issues not raised in a petition for review are not properly before us on appeal.  *Id.*

¶ 19    Because father did not raise, and the district court did not address, the constitutionality of section 14-10-129, his contention is not preserved for appellate review.  Accordingly, we decline to address it now.  *See K.L-P.*, 148 P.3d at 403.  That leaves only section 14-10-124.

¶ 20    When a party challenges the constitutionality of a statute, C.A.R. 44 requires that, in an appellate proceeding where the state is not a party, the party raising the constitutional challenge must notify the clerk of the supreme court in writing, at which point the clerk must certify the matter to the attorney general.  *See also* C.R.C.P. 57(j) ("If a party files a motion or other pleading asserting

that a state statute . . . is unconstitutional, that party shall serve the state attorney general with a copy of the motion or pleading, and the state is entitled to be heard.").

¶ 21    Here, the state is not a party.  Father was therefore required to notify the supreme court clerk and allow the attorney general an opportunity to respond to his facial constitutional challenge to section 14-10-124.  There is nothing in the record to indicate that he filed the required notice or that the attorney general was otherwise allowed to be heard on the issue.

¶ 22    Because father did not comply with C.A.R. 44, we decline to address the merits of his constitutional challenge to section 14-10-124.  *See In re Marriage of Cespede*s, 895 P.2d 1172, 1176 (Colo. App. 1995) (contention that statute violates the constitution was not properly before the appellate court where the father neither complied with C.R.C.P. 57(j) in the district court nor with C.A.R. 44 on appeal); *In re J.M.A.*, 240 P.3d 547, 549 (Colo. App. 2010) (facial challenge to the constitutionality of a statute was barred from consideration because of failure to comply with C.A.R. 44); *cf. In re Estate of Becker*, 32 P.3d 557, 560-61 (Colo. App. 2000) (lack of C.A.R. 44 notice does not preclude an *as-applied* constitutional

challenge), *aff'd sub nom. In re Estate of DeWitt*, 54 P.3d 849 (Colo. 2002); *In re Marriage of Davis*, 252 P.3d 530, 533 (Colo. App. 2011) (lack of C.A.R. 44 notice does not preclude claim that retroactive application of statute is unconstitutional).

¶ 23    Even if we were to assume that the issue was properly before us, we disagree with father's argument that section 14-10-124 is unconstitutional because it does "not serve to protect a compelling state interest nor [is] [it] narrowly tailor[ed] in [its] application." Father cites *Shapiro v. Thompson*, 394 U.S. 618 (1969), and *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621 (1969), neither of which involve parenting time.  He simply recaps their general holdings and asserts, in conclusory fashion, that under *Kramer*, section 14-10-124 must be "strictly scrutinized" and that under *Troxel*, state interference is impermissible because he and mother are fit and proper parents.

¶ 24    A statute is presumed constitutional, and the party challenging it bears a heavy burden to show unconstitutionality beyond a reasonable doubt.  *See Marquez v. Schaefer*, 2025 COA 44, ¶ 46; *In re Marriage of Lohman*, 2015 COA 134, ¶ 35.  But father does not tell us how the cited cases apply to the facts of this case,

nor does he undertake any meaningful constitutional analysis. We therefore decline to address the argument further. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (an appellate court may decline to consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *see also Marquez*, ¶ 54 (declining to address perfunctory and conclusory constitutional arguments).

¶ 25    The same is true about father's claim that section 14-10-124 is unconstitutionally overbroad. The overbreadth doctrine is typically confined to statutes that substantially burden protected speech or otherwise have a chilling effect on expressive activity. *See People v. Lee*, 717 P.2d 493, 495 (Colo. 1986) ("Generally, the overbreadth doctrine is applied when legislative enactments threaten the exercise of fundamental or express constitutional rights, such as first amendment freedoms."); *see also People v. Conlon*, 2025 COA 79M, ¶ 85 ("[A] statute is facially overbroad if it sweeps so comprehensively as to substantially include within its proscriptions constitutionally protected speech."); *People v. Graves*, 2016 CO 15, ¶ 12 (a statute is overbroad if its scope is so comprehensive that it restricts or has a chilling effect on speech

protected by the First Amendment). Father fails to explain why the doctrine has any application in this domestic relations context, nor does he walk us through any constitutional reasoning to support his claim. Absent such a showing, we decline to consider the argument. *See Zander*, ¶ 27; *Marquez*, ¶ 54

¶ 26 And to the extent that father claims that section 14-10-124 is unconstitutional because it is "drafted" "so vaguely" that it invites judicial bias and gives "unfettered discretion to infringe on a parent's fundamental right to parent," we disagree. A statute is not unconstitutionally vague when it includes explicit standards that guide decision-making and provides a person of ordinary intelligence fair notice of what is required. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (Vague statutes fail to "provide explicit standards for those who apply them" and do not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."); *People In Interest of A.N.*, 2019 COA 67, ¶ 19 ("[W]hen considering whether a statute is unconstitutionally vague, we examine whether the statute gives fair warning of prohibited conduct and whether it lacks

explicit standards for application, creating a danger of arbitrary and capricious enforcement.").

¶ 27 Section 14-10-124 directs a district court to resolve parenting time disputes based on the children's best interests, using specific, articulated factors. *See* § 14-10-124(1.5)(a). These standards, while necessarily flexible, reflect the fact-specific nature of domestic relations cases and do not give unfettered discretion to the district court. *See C.J.S.*, 37 P.3d at 482; *Rayer v. Rayer*, 512 P.2d 637, 639 (Colo. App. 1973) (the district court, who is best able to appraise the parties' circumstances, is best fitted to make the factual determinations regarding custody).

### D. Best Interests

¶ 28 Next, father contends that the magistrate improperly denied his request for equal parenting time because the magistrate had an "arbitrary belief" that "changing parenting time schedules" was not in the children's best interests. We disagree.

¶ 29 The magistrate evaluated the best interests factors and made the following findings:

- Father sought a week on, week off regular parenting time schedule, while mother wanted to formalize the parties'

existing arrangement, under which father had parenting time every Friday from after school until the children's return to school Tuesday morning. *See* § 14-10-124(1.5)(a)(I).

- The children were not sufficiently mature to express an independent and rational preference about parenting time. *See* § 14-10-124(1.5)(a)(II) (the children's wishes are relevant to their best interests).

- The children had a strong bond with both parents and spent time with their grandparents. *See* § 14-10-124(1.5)(a)(III) (interaction and interrelationship of the children with their parents, siblings, and any other person who may significantly affect their best interests are relevant to their best interests).

- Father committed acts of domestic violence, specifically coercive control, by continuing to disparage mother through text messages. *See* § 14-10-124(1.5)(a)(III.5) (domestic violence is relevant to the children's best interests).

14

- One child was struggling somewhat at school and the children had difficulty transitioning after father's parenting time. *See* § 14-10-124(1.5)(a)(IV) (the children's adjustment to their home, school, and community is relevant to their best interests).

- Father had a 100% military disability rating, but it did not affect his parenting time. *See* § 14-10-124(1.5)(a)(V) (mental and physical health of all individuals involved is relevant to the children's best interests).

- There was no issue with the parties' ability to encourage the sharing of love, affection, and contact between the children and the other party. *See* § 14-10-124(1.5)(a)(VI).

- Mother had historically been the children's primary parent, although father had become more involved. *See* § 14-10-124(1.5)(a)(VII) (whether the past pattern of involvement of the parties with the children reflects a system, time commitment, and mutual support is relevant to the children's best interests).

- The parties were able to place the children's needs ahead of their own. *See* § 14-10-124(1.5)(a)(XI).

15

- The children needed consistency, and frequent changes to the parenting schedules were not in their best interests. *See* § 14-10-124(1.5) (the court must consider the factors enumerated, as well as all other relevant factors).

¶ 30    From those findings, the magistrate concluded that keeping the current parenting time schedule was in the children's best interests. The magistrate reasoned that they needed stability rather than a schedule that changed year after year. Contrary to father's contention, the magistrate was not precluded from considering the children's need for stability and consistency because under a best interest analysis, the magistrate had to consider all factors it deemed relevant. *See* § 14-10-124(1.5)(a); *Collins*, ¶ 7.

¶ 31    Because the magistrate applied the correct legal standard and made sufficient findings, which have record support, we see no abuse of the magistrate's broad discretion in denying father's request for equal parenting time. *See S.Z.S.*, ¶ 13; *Collins*, ¶ 8.

## IV. Modification of Child Support

### A. Relevant Law

¶ 32    In calculating child support, income means a party's actual gross income if the party is fully employed. § 14-10-115(3)(c), C.R.S. 2025. If, however, a party is voluntarily unemployed, child support is calculated based on a determination of that party's potential income. § 14-10-115(5)(b)(I). "'[P]otential income' is described as the amount a party could earn from a full-time job commensurate with the party's demonstrated earning ability." *In re Marriage of Tooker*, 2019 COA 83, ¶ 26.

¶ 33    The court has broad discretion in determining income, and whether to impute income to a party is typically a question of fact that we will not disturb if it is supported by the record. *See People v. Martinez*, 70 P.3d 474, 480 (Colo. 2003). The decision to modify child support is also within the court's sound discretion. *See In re Marriage of Bergeson-Flanders*, 2022 COA 18, ¶ 10.

### B. Imputation of Income

¶ 34    Father contends that the magistrate erred by imputing a minimum wage income to him even though he was disabled and unable to work. We disagree.

17

¶ 35    The record reflects that father was thirty-two years old at the time of the modification hearing.  Father testified that in December 2022, his military disability rating increased to 100%, which more than doubled his benefits.  As a result, he "ceased working" because his new income "was enough to survive on," allowed him to "take care of [him]self," and "provide[d] him a significant opportunity . . . to spend way more time with the kids."  He recalled that his previous job as a machinist was difficult due to his disability.  But he also testified that his disability did not impact his ability to work certain jobs.  When asked directly whether he could work, he said, "If need be, yeah, I am capable of quite a bit."

¶ 36    Based on his testimony, the magistrate found that, despite his disability, father had the ability to work, albeit not at his prior employment, and was thus shirking his child support obligation pursuant to *Martinez*.  The magistrate then imputed to him a full-time minimum wage salary of $1,923 per month.

¶ 37    Because the record supports the magistrate's income finding, we will not disturb it.  *See Martinez*, 70 P.3d at 480; *Thorburn*, ¶ 25.

## C. Rental Income

¶ 38    Last, father contends that the magistrate erred by including his rental income when calculating child support. We are not persuaded.

¶ 39    Father testified that he owned a home with a mortgage in his name alone and that two individuals lived there, each paying him $1,000 per month in rent. Under section 14-10-115(5)(a)(I)(J), the $2,000 in monthly rental income must be included in his gross income when determining child support. *In re Marriage of Schaefer*, 2022 COA 112, ¶ 28. So, we discern no error in this regard. *See Martinez*, 70 P.3d at 480.

¶ 40    Nor are we persuaded by father's related argument that his $2,000 in rental payments should not count as gross income because he was not receiving a net gain, as those payments fell short of his mortgage obligation. Father also lived in the home, and the rent payments he received, even if they did not cover the full mortgage, reduced the housing costs he would otherwise have to pay himself. *See Tooker*, ¶ 18 (benefits are included as gross income for child support purposes if they reduce an individual's

daily living expenses unless the child support statute specifically excludes them).

¶ 41 We also reject father's assertion that the magistrate should have included mother's monthly rent payments in her gross income. Mother testified that she did not own the residence she currently lived in. Instead, she rented the property along with several family members, and each person paid their own share of the rent. Unlike father, because she was not receiving rent payments from others for their use of property she owned, we cannot say that the magistrate erred by excluding the payments made by her family members who lived in the home. *See Martinez*, 70 P.3d at 480.

## V. Disposition

¶ 42 The order is affirmed.

JUDGE BROWN and JUDGE SCHUTZ concur.