25CA1162 Mile High Paving v Alpha Milling 06-25-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1162
Adams County District Court No. 23CV30820
Honorable Teri L. Vasquez, Judge

Mile High Paving Co. d/b/a Elliott Investments,

Plaintiff-Appellant,

v.

Alpha Milling Company, Inc.,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE JOHNSON
Freyre and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

Johnson & Ytterberg, P.C., Deborah A. Ytterberg, Craig D. Johnson, Broomfield, Colorado, for Plaintiff-Appellant

McConaughy & Sarkissian, P.C., Ivan A. Sarkissian, David C. Taylor, Denver, Colorado, for Defendant-Appellee

¶ 1    In this construction dispute, plaintiff, Mile High Paving Co. (Mile High), appeals the district court's judgment awarding it $28,000 in damages against defendant, Alpha Milling Company, Inc. (Alpha).[1]  Mile High alleges that the district court erred by (1) preventing Mile High's expert from testifying about breach and causation and (2) relying on speculation and lay witness testimony to reach its damages determination.  We disagree with both contentions and, therefore, affirm the judgment.

## I.    Background

¶ 2    A general contractor overseeing a property development in Thornton contracted with Mile High to perform asphalt paving for a residential subdivision.  After the paving was completed, an inspector with the City of Thornton determined that the streets needed to be milled and overlaid, a process by which machinery destroys and removes the asphalt so that another layer may be placed to bring it to the appropriate level.  Mile High contracted with Alpha to perform this milling work.  After Alpha completed the work, Mile High's representative observed that some of the concrete

---

[1] Mile High brought claims against other defendants, but they were all dismissed before trial, leaving only Alpha.

curb next to the asphalt was chipped and damaged. The parties agreed that Alpha caused some damage to the concrete during its milling operations. Under the terms of the paving contract, Mile High was responsible for repairing the damaged concrete because it related to work done by its subcontractor. But after Mile High hired other contractors to complete the repairs, it brought suit against Alpha for breach of contract and negligence.

¶ 3 Following a bench trial, the district court entered judgment in favor of Mile High and against Alpha in the amount of $28,000. Mile High now appeals.

## II. Expert Testimony

¶ 4 Mile High contends that the district court erred by disqualifying its expert, Dr. David Amori (Dr. Amori), from offering breach or causation testimony and instead qualifying him to testify about only the standards of care in concrete milling and paving. We disagree.

### A. Additional Facts

¶ 5 During trial, Mile High sought to admit Dr. Amori as an expert in "geotechnical engineering, including application to industry standards of care for paving, concrete, and milling contractors."

Alpha objected to Dr. Amori tendering "opinions . . . regarding damage resulting from asphalt milling." After confirming with Mile High that part of Dr. Amori's planned testimony would opine on damage from Alpha's milling work, the district court noted that his qualifications relating to standards of care "sound[ed] different than damages caused by milling activities" and that he could "talk about the standard of care," but not "whether that standard of care was breached." The court's colloquy with Dr. Amori follows:

> THE COURT: [I]f I understood his testimony . . . his scope of work included inspecting damages, but he himself did not do it. Is that correct?
>
> WITNESS: My . . . scope of work would have included identifying any damage that would have been done by the milling process or anything else.
>
> THE COURT: . . . And the rest of your testimony was you couldn't — you don't believe that you performed — while it was within your scope of work, you didn't actually do that?
>
> WITNESS: Well, what . . . I think my testimony is that that would have been part of my scope of work, but I don't have a specific address or date for . . . when I did that.

THE COURT: . . . Have you, in your experience, . . . actually inspected and given opinions on damage from milling activities?

WITNESS: I have to say I have. I don't have any specifics for you.

. . . .

THE COURT: I'm asking about specific experience. Are you guessing that you've done that, or do you know you've done it, you just don't know specific projects?

WITNESS: . . . I know I'm an expert in damage to concrete and I've looked at thousands and thousands of . . . projects along those lines. I can't tell you right now if any of those were specific to a milling machine.

¶ 6     Because the district court felt it was "not getting straight answers" from Dr. Amori, it found that he was qualified as "an expert in geotechnical engineering and its application to the standard of care in paving concrete and milling. But opinions regarding damage from milling [we]re excluded." Mile High attempted to rehabilitate Dr. Amori in light of the court's decision, but the court "did not hear anything specific in his [rehabilitation] testimony in terms of his educational degrees and how it relates to the ability to assess damage from milling activities" and maintained

4

its ruling. Dr. Amori then testified without opining on breach or causation, consistent with the court's decision.

### B.   Preservation

¶ 7   Alpha contends that Mile High did not preserve this issue. We disagree.

¶ 8   To preserve an argument for appeal, a party must present the "sum and substance of the argument" to the district court. *Marquez v. Schaefer*, 2025 COA 44, ¶ 30 (quoting *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25). And a party may claim error in a ruling to exclude evidence only if the error affects a substantial right of the party and "the substance of the evidence was made known to the court by offer or was apparent from the context." CRE 103(a)(2).

¶ 9   After Alpha objected to Dr. Amori testifying beyond the standard of care, the district court offered Mile High an opportunity to rehabilitate the witness. After Mile High's rehabilitative questioning, it retendered Dr. Amori as an expert qualified to testify about breach and causation, but the district court did not change its ruling.

¶ 10 After Dr. Amori testified about the relevant standard of care, Mile High sought to "preserve for appeal the issue of whether an expert qualified to testify to a standard of care can be disqualified from testifying to the breach of the same standard. In this case, Dr. Amori." Through these exchanges, Mile High presented the "sum and substance" of its argument to the district court. *Marquez*, ¶ 30. And but for the court's ruling, Mile High sought to have Dr. Amori testify about breach, causation, and the resulting damages he attributed to Alpha's milling work in addition to his opinion on the standard of care. Therefore, Mile High's argument regarding the court's ruling denying Dr. Amori from testifying beyond the standard of care is preserved for appellate review.

### C. Standard of Review and Applicable Law

¶ 11 District courts have discretion to determine the admissibility of expert testimony, and the exercise of that discretion "will not be overturned unless manifestly erroneous." *Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 64. This deference reflects the "superior opportunity of the [district court] to gauge both the competence of the expert and the extent to which his opinion would be helpful to

6

the jury." *Id.* (quoting *People v. Ramirez*, 155 P.3d 371, 380 (Colo. 2007)).

¶ 12    To testify as an expert, a witness must be qualified by "knowledge, skill, experience, training, or education." CRE 702. A district court determines whether expert testimony is reliable by considering, in part, whether the expert is qualified to opine on the matter. *See Est. of Ford v. Eicher*, 250 P.3d 262, 271 (Colo. 2011).

### D.    Analysis

¶ 13    Mile High contends that *Gresser v. Banner Health*, 2023 COA 108, supports the proposition that, because Dr. Amori was qualified to give an expert opinion on the standard of care, he should have also been qualified to opine about breach and causation. We disagree and do not read the case as broadly as Mile High does.

¶ 14    In *Gresser*, a division of this court upheld a district court's qualification of a medical expert to testify about the relevant standard of care and causation in a medical malpractice lawsuit. *Id.* at ¶ 49. Mile High attempts to analogize this case to *Gresser*, contending that Dr. Amori, just like the medical expert in *Gresser*, should have been qualified to testify about breach and causation. But nothing in *Gresser* indicated that an expert must be permitted

7

to testify about breach and causation; simply, the division held that the expert witness in that case had the requisite experience to opine on these issues. *See id.* at ¶¶ 52-53.

¶ 15     This makes *Gresser* factually distinguishable from this case. Here, Dr. Amori could not point to direct, specific experience inspecting and giving an opinion on milling damage to asphalt. Therefore, Mile High's reliance on *Gresser* does not support its position.

¶ 16     Instead, in its gatekeeping role, the district court properly exercised its discretion to determine that Dr. Amori did not possess the requisite specific experience to opine on breach, causation, and damage resulting from the milling work. While Dr. Amori indicated he had overseen thousands of projects that included milling and overlay work, he could not, when asked by the court or Mile High's counsel, specify "if any of those were specific to a milling machine." Even after Mile High's counsel attempted to rehabilitate Dr. Amori, the district court noted that the witness testified that he had observed milling damage during his position with the Department of Transportation. But the court stated this was not sufficient because he did not say "anything specific . . . in terms of his

educational degree and how it relates to the ability to assess damage from milling activities."

¶ 17 From what we can discern, the court wanted specifics as to how Dr. Amori's prior experience demonstrated his expertise to assess damage from a milling machine and how, when such damage is caused, to apportion fault and estimate the cost to remedy it. Instead, his vague answers demonstrated that he was generally aware that paving could cause damage to concrete, that milling work was the remedy, and that he had observed such work and damage. But his testimony did not establish with specificity how his experience, general knowledge, or observations were sufficient to qualify him to assess the specific damage and apportion fault in this case. *See People v. Douglas*, 2015 COA 155, ¶ 72 (affirming the district court decision not to qualify a witness because, while the witness had on the job training with medical marijuana grows, the witness's responses did not address what the district court wanted to know, which "was the basis of [the witness's] knowledge of the construction of marijuana grows"); *see also People v. Tidwell*, 706 P.2d 438, 439 (Colo. App. 2005) (affirming a court's decision not to qualify a witness as an expert

9

due to her "vague explanation of her experience and the lack of identifiable standards for membership in the organizations she belonged to").

¶ 18    Thus, we discern no abuse of discretion in the district court's decision to limit Dr. Amori's testimony.

## III.    Damages

¶ 19    Mile High asserts that the district court erred by reaching a damages determination that was based on (1) speculation and (2) lay witness testimony that required specialized knowledge.  We disagree with the first contention and, even assuming the district court erred as to the latter contention, any resulting error was harmless and not reversible.

### A.    Additional Facts

¶ 20    The district court found that Mile High had proved by a preponderance of the evidence that Alpha failed to perform its obligations under the parties' contracts due to defective performance.  It noted that there was "much testimony and evidence regarding the damages at issue."  Mile High, the court found, "offered evidence that it spent over $1.2 million on [repair and replacement] work."  Alpha, on the other hand, "presented

evidence that, at most, the cost to repair concrete in those areas within [Alpha]'s scope of work was $462,000." But despite these competing figures, the court also noted, there was "little to no evidence of the cost to repair damage *likely caused by Defendant.*" (Emphasis added.)

¶ 21     As it related to damages, the court found the following:

- Even before Alpha began work, thirty-two stones of concrete needed to be replaced by Mile High.

- Neither party provided the court with any description of what a "stone of concrete" represented in terms of linear feet or the cost to repair one stone.

- There was no evidence presented of the linear feet of concrete that required replacement based on damage from Alpha's milling work.

- One of Mile High's witnesses admitted that some of the concrete damage that required repair and replacement was not Alpha's responsibility.

- There was further concrete damage during Mile High's repair and replacement process that was not part of the original damage.

- The cost of replacing all of the concrete where Alpha milled was $462,000, but this did not account for the concrete replacement caused by Alpha's damage — it accounted for the entire replacement in the areas where Alpha performed milling work.

- The invoices tendered by Mile High to support its damages request were related to the paving project, but the documents did not break down where the work was performed, which was important because Alpha did not mill the entire subdivision area.

- No witnesses from the subcontractors who were invoiced as part of the project testified about their specific scope of work reflected in the invoices; Mile High's witness provided the only testimony about the invoices, but that witness did not have any personal knowledge of the particular scope of the work per subcontractor based on the invoices.

- When Alpha's witness examined the damaged stones in person, he estimated the damage at roughly $200-

$600 per concrete stone for a total estimate of approximately $28,000 attributable to Alpha.

¶ 22    The district court explained that, for Alpha to be assessed damages on the basis of the invoices alone, there needed to be "at least some facts connecting the work billed in the invoices to areas within [Alpha]'s scope of work," and that there also needed to be "some evidence that the work billed for in the invoices involved [repair and replacement] of concrete damaged by [Alpha]." Based on this rationale, the district court found that Mile High had submitted "no evidence in this regard regarding either of these issues." And to award damages "based on the invoices alone would [have] require[d] the [district] court to impermissibly speculate about the correlation between those invoices, the scope of [Alpha]'s work, and the damage cause by [Alpha] that necessitated [repair and replacement]." As a result, the district court found that "neither the invoices nor the calculation provided by [Mile High's witness] constitute[d] competent evidence of [Mile High]'s damages due to [Alpha]'s milling work."

¶ 23    The district court analogized this case to *Roberts v. Adams*, 47 P.3d 690 (Colo. App. 2001), where the plaintiff sought damages for

13

carpet repair but did not provide evidence sufficient for the court to estimate the amount of damages. The court determined that, like the plaintiff in *Roberts*, "[Mile High]'s [invoices] do not provide evidence sufficient to estimate the amount of damages caused by [Alpha]." But, unlike *Roberts*, the district court found that there was some evidence of the costs relating to concrete damaged by Alpha — namely, Alpha's witness who testified that Alpha "caused damage that required $28,000 to [repair and replace]." Thus, the district court found that this evidence established that Mile High had proved by a preponderance of the evidence that it sustained $28,000 in damages due to Alpha's breach of contract and entered judgment reflecting that amount. It is this damages determination that Mile High now appeals.

### B. Standard of Review

¶ 24 We review a district court's "assessment of the amount of damages for clear error." *Veolia Water Techs., Inc. v. Antero Treatment LLC*, 2024 COA 126, ¶ 131 (*cert. granted* Sep. 2, 2025). And we review de novo whether the district court misapplied the law when determining the measure of damages to be awarded. *Id.*

## C. Analysis

¶ 25    The district court did not err or misapply the law in determining the amount of damages to be awarded to Mile High.

¶ 26    We reject the argument that the district court based its damages award on speculation.  Rather, the district court's ruling avoided basing a damages calculation on speculation when it found that Mile High's proffered evidence — the invoices and witness testimony about the invoices — was insufficient evidence of damages *caused* by Alpha's milling work.  In effect, because Mile High and its subcontractors caused some of the damage and the invoices and testimony did not specify which costs were attributable to Alpha's work, the district court determined there was no "non-speculative method . . . to determine what value should be assigned to the further damage or the damage caused by [Mile High] and/or its subgrade contractor."

¶ 27    Instead, like the plaintiff in *Roberts*, Mile High did not present sufficient evidence from which the district court could compute its damages.  Thus, the district court correctly determined that it could not award damages based on the invoices and witness testimony Mile High presented.  *See Roberts*, 47 P.3d at 696-97.

15

¶ 28    But unlike *Roberts*, there was testimony from Alpha's witness that estimated that the damage *caused by* Alpha's milling work would cost roughly $28,000 to repair and replace based on a cost-per-stone estimate.  Consistent with this more specific evidence, the district court found that the only damages Mile High had proved by a preponderance of the evidence due to Alpha's breach of contract amounted to $28,000.  This award was not based on speculation; rather, it was based on an estimate from a witness who observed the damage firsthand.

¶ 29    Nonetheless, Mile High contends that the district court erred by calculating damages based on Alpha's witness because, as a lay witness, he could not testify about an issue that required expert testimony.  We note that Mile High's witness who testified about the invoices was likewise not endorsed as an expert.  Even assuming the measure of damages required expert testimony, we conclude that any error was harmless.

¶ 30    In the civil context, an error is harmless if it does not affect the substantial rights of the parties.  C.R.C.P. 61.  "An error affects a substantial right only if 'it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired

the basic fairness of the trial itself.'" *People in Interest of R.D.*, 2012 COA 35, ¶ 25 (quoting *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010)). Courts have determined that an error is harmless if it benefits the person asserting it. *See Orsinger Outdoor Advert., Inc. v. Dep't of Highways*, 752 P.2d 55, 66 (Colo. 1988) (concluding that, if errors inured to appellant's benefit, they must be deemed harmless); *see also Prospect Dev. Co. v. Holland & Knight, LLP*, 2018 COA 107, ¶ 24 (we need not reverse district court errors if the error was harmless).

¶ 31     Had the district court followed Mile High's reasoning and not relied on the $28,000 estimate, it appears that Mile High would have received $0 in damages — an outcome less preferable to Mile High than the one reached by the district court. Therefore, even assuming the district court erred by relying on lay witness testimony to reach its damages determination, we conclude it was harmless because it inured to Mile High's benefit. We decline to reverse the district court's damages award.

IV.     Conclusion

¶ 32     The district court's judgment is affirmed.

JUDGE FREYRE and JUDGE KUHN concur.

17